[No. 42220. En Banc. November 15, 1972.]

THE STATE OF WASHINGTON, *Petitioner*, v. THEODORE KUBICEK, *Respondent*.

*Robert E. Schillberg, Prosecuting Attorney,* and *David G. Metcalf, Deputy,* for petitioner.

*Richard A. Bailey,* for respondent (appointed counsel for appeal).

HALE, J.—A jury found defendant guilty of burglary in the second degree, returning a special verdict that at the time of the crime he was armed with a deadly weapon. He appealed the judgment and sentence entered on the verdict to the Court of Appeals which reversed on the ground that the instruction on alibi constituted reversible error. 5 Wn. App. 293 (1971). We granted review (80 Wn.2d 1002 (1971)), partly on a divergence of views among the divisions of the Court of Appeals, and reverse the Court of Appeals. *See State v. Adams,* 5 Wn. App. 366, 487 P.2d 218 (1971), *aff'd,* 81 Wn.2d 468, 503 P.2d 111 (1972), and *State v. Pam,* 1 Wn. App. 723, 463 P.2d 200 (1969), *review denied,* 77 Wn.2d 963 (1970).

About 2:50 a.m., September 17, 1969, Edward A. Mallang,

a police officer on routine patrol in the town of Snohomish, driving by the U & I Tavern, noticed for the first time a blue 1966 Chrysler and a light brown 1962 Chevrolet parked in a cul-de-sac. He knew that the 1962 Chevrolet belonged to a family residing in a house on the cul-de-sac; the other car—the 1966 Chrysler—he had not seen before. He checked both cars and observed a man sleeping in the Chrysler but did not disturb him. A little later, on resuming his patrol of that area and returning to the cul-de-sac, he saw a third car there, this one a burgundy-colored 1965 Mustang, with license plates AYH 403, in which, as a police officer, he had a particular interest.

He recognized the Mustang automobile from an investigation he had made about 1 month earlier on August 20th, when he had seen it parked in the 1700 block of Rucker Street in Everett. On that occasion, the police were looking for a 1965 burgundy-colored Mustang with that same license number, and he made note of its location. A day or two later, August 21st or 22nd, while still interested in that particular car, he saw it on the street, drove alongside it, and identified its driver as Mr. Kubicek, the defendant in this case. He did not see the car nor the defendant again until the 17th of September when, as noted, he saw the car parked in the cul-de-sac at about 3:15 a.m. in the town of Snohomish.

On seeing the Mustang, Officer Mallang radioed the police station for a registration check on the vehicle and proceeded on foot to inspect the business premises in the 900 and 1000 block on First Street, Snohomish. Staying close to the building, he looked through the front glass of the U & I Tavern and observed that a cover had been removed from one of the two pool tables. His suspicion aroused, he looked more closely and saw a man crouching at the pool table. The man he observed was looking at him. It appeared to the officer as though the man had been trying to open the coin box of a pinball machine.

Officer Mallang said that he was only 8 to 10 feet from the point where the man was kneeling and that the man

looked at him for what seemed an extremely long period of time—10 to 15 seconds—and that he recognized him to be Ted Kubicek, the defendant, the same man whom he had seen driving the 1965 burgundy-colored Mustang automobile in August. After looking at the police officer and hesitating, the defendant darted and ran toward the rear of the tavern. The officer said the man was wearing dark brown clothing, a dark khaki trouser of the type worn in a service station, had dark black hair, a little on the long side. He described a number of lights in the tavern which so illuminated the area that he could see the defendant clearly.

The defendant, he said, ran toward the bar, and the officer fired a warning shot over his head. The defendant, he said, crouched at a break in the bar and pointed a pistol at him. The officer fired again, this time more directly at the defendant, and saw him disappear, to reappear at the back of the tavern and then disappear again. When other officers arrived, Officer Mallang led them to a nearby building which he thought Kubicek had entered, and using a loudspeaker called out, "Ted Kubicek, you have been recognized. You are surrounded. Come out into the open with your arms in the air." There was no response; the defendant, he said, could not be found in the vicinity.

Returning to the 1965 burgundy-colored Mustang, the officer found a pair of pants and a shirt in the front seat. In the jury's absence, he testified that in the pants was a wallet bearing identification in the name of Theodore W. Kubicek or Ted Kubicek and a conditional sale contract for the car showing the buyer to be Theodore W. Kubicek.

Asked by defendant's counsel on cross-examination and in the jury's absence if he had read some of defendant's personal correspondence in the wallet from the Board of Prison Terms and Paroles, he answered, "Yes," and that he had taken possession of this correspondence and kept it in the Snohomish Police Department's possession since September 17, 1969. Also, on cross-examination, he was asked:

Q. Officer, based on your personal knowledge did the Board of Prison Terms and Paroles, on the 12th day of

December, 1969, hold a revocation hearing involving the defendant, Mr. Kubicek? A. Yes, there was a revocation hearing.

Officer Mallang said that, before returning to the Mustang automobile which he had earlier identified, and at the time when he recognized the defendant crouching by the pinball machine in the tavern, he had no doubt in his mind as to the accused's identity. He testified that, in connection with his work as a police officer, he was that night carrying with him a picture of Ted Kubicek; that, although he had a flashlight with him, the interior of the U & I Tavern was light enough for him to see and identify the defendant without it.

The owner of the U & I Tavern testified that his place had been broken into that night; that the cash change drawer on the till had been moved and his pistol taken; that money trays on the pool tables had been forced open and the money removed. Another police officer said that he had seen the defendant Kubicek on the preceding August 19th driving a burgundy Mustang bearing license No. AYH 403, and that he had stopped the defendant who had shown him his driver's license.

The defendant testified he had gone to a cafe earlier in the evening and then to a tavern. He left the tavern about midnight and he and a casual acquaintance went to Duffy's No. 2 in the town of Monroe, he said, to shoot pool. He was driving a 1965 burgundy-colored Mustang car, he said. They shot pool until the place closed at about 2 a.m., the early morning of September 17th. He said they left Duffy's No. 2 and drove to Snohomish and there left the 1965 burgundy-colored Mustang. They then drove the other man's 1962 Chevrolet into Everett where they went to the London Cafe. He left the London Cafe about 3:45 a.m., he said, and walked to his home about two blocks away where he went to bed.

He corroborated his landlady's testimony that next morning when she told him the police were looking for him, he told her, "Well, call them up and tell them I'm

coming up." He did not, however, go to the police station, he acknowledged. Instead, he took a bus to Pasco to visit his wife and returned 4 days later to Everett where he was subsequently arrested. He said he asked a friend of his to call the police and determine if his car had been impounded after he had talked to his landlady the morning of the 17th of September.

The state produced a witness in rebuttal, a young woman, who said she knew the defendant, that she met him at the London Cafe in Everett about 1:30 the early morning of the 17th of September; that he was with another man; and that Kubicek drove her to where she had left her car in Monroe, leaving her at between 2:30 and 3 a.m., thus placing the defendant and his car close to the scene of the burglary in ample time to perpetrate it. She also identified a shirt and trousers found in the car by Officer Mallang as similar to that worn by the defendant when she had met him at the cafe that night.

We granted review mainly to examine the claim of error directed to instruction No. 9, which reads:

> You are instructed that a defense interposed by the defendant in this case is an alibi; that is, that the defendant was at another place at an identical time the crime was committed, if committed at all. When the State makes out such a case as would sustain a verdict of guilty, and the defendant offers evidence, it is incumbent upon him to go forward with the evidence to sustain his defense of alibi to your satisfaction. It is not incumbent upon him to prove alibi beyond a reasonable doubt; and when the proof is all in, both that given by the State and for the defendant, then the primary question is (the whole evidence being considered) is the defendant guilty beyond a reasonable doubt, the law being that, if, after you have considered all the evidence as well as that touching the alibi as the evidence introduced by the State, you have a reasonable doubt of the guilt of the accused, you should acquit; if you have not, you should convict.

Defendant contends that this instruction unconstitutionally shifts the burden of proof to him and deprives him

of the presumption of innocence doctrine and reasonable doubt protection, citing *Stump v. Bennett,* 398 F.2d 111 (8th Cir. 1968), *cert. denied,* 393 U.S. 1001, 21 L. Ed. 2d 466, 89 S. Ct. 483 (1968); and *Sullivan v. Scafati,* 428 F.2d 1023 (1st Cir. 1970). Since the alibi instructions in those two cases differ markedly from the one in issue here, we do not find their rationale of significant impact in the instant case. Instead, we think that this case is and should be controlled by our disposition of this identical issue in *State v. Adams,* 81 Wn.2d 468, 503 P.2d 111 (1972), where we held that this same instruction did not abridge the accused's constitutional rights nor constitute reversible error. We did, however, observe in that case that changes may be initiated in instructional material for reasons short of reversible error, and we were of the opinion in that case and in this one that, if the instructions are otherwise complete and proper, a charge to the jury without an instruction on alibi is superior to one with it, even though it be requested by the defendant. Accordingly, it was the decision of this court in *Adams* that no alibi instruction be given in the future, though requested by either party.

In *Adams,* we pointed out that an alibi instruction had been sanctioned by the laws of this state since *State v. Burton,* 27 Wash. 528, 67 P. 1097 (1902); and that an instruction virtually identical to instruction No. 9 now before us has been used since *State v. Rosi,* 120 Wash. 514, 208 P. 15 (1922). This court affirmed the same instruction in *State v. Johnson,* 122 Wash. 394, 210 P. 774 (1922), citing *Rosi* with approval and again setting forth the instruction verbatim adhered to it in *State v. Pistona,* 127 Wash. 171, 219 P. 859 (1923). *Accord, State v. Turpin,* 158 Wash. 103, 290 P. 824 (1930). Small wonder then that the instruction has been rarely challenged, so firmly has it been rooted in precedent here. In the instant case as in *Adams,* the jury was thoroughly instructed as to the burden of proof beyond a reasonable doubt, and the presumption of innocence.

We adhere to the opinion that, although the alibi instruction was not a reversible error and did not deprive the

accused of any constitutional rights, the court ought not be impervious to change in the matter of instructions to the jury. Many changes may and should be brought about in trial procedures for good reason and on grounds short of the drastic need to find reversible error. Accordingly, it is our opinion that, though the instruction did not amount to reversible error, a charge to the jury without such an instruction would be superior to one with such an instruction. To that end we, therefore, reiterate what we said in *Adams,* that an instruction on alibi, though requested by either party, should not in the future be given unless so ordained by the legislature.

Reversed and remanded for reinstatement of the judgment and sentence of the superior court.

FINLEY, ROSELLINI, HUNTER, NEILL, STAFFORD, and WRIGHT, JJ., and COCHRAN, J. Pro Tem., concur.

HAMILTON, C.J. (concurring in part)—I concur in the reinstatement of the judgment and sentence of the superior court, but, as in *State v. Adams,* 81 Wn.2d 468, 503 P.2d 111 (1972), would authorize the giving of an appropriate alibi instruction when requested by the accused and permitted by the evidence.