894 A.2d 716

**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**Brian W. HAWKINS, Appellee.**

Supreme Court of Pennsylvania.

Submitted Feb. 24, 2004.

Decided March 29, 2006.

a remand to the intermediate appellate court for consideration of this (and any other open) issue.

368

Nicholas J. Casenta, Joseph W. Carroll, III, for the Com. of PA, appellant.

Christian J. Hoey, for Brian Hawkins, appellee.

Before: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice BAER.

The Commonwealth appeals the Superior Court's order affirming the PCRA[1] court's grant of a new trial to Brian Hawkins (Appellee). The courts below ruled that trial coun-

---

1. *See generally* Post Conviction Relief Act (PCRA), Act of May 13, 1982, P.L. 417 No. 122, § 2, as amended, 42 Pa.C.S. §§ 9541–46.

sel's decision not to seek a jury charge regarding Appellee's alibi evidence constituted ineffective assistance of counsel. *See Commonwealth v. Hawkins*, 848 A.2d 954 (Pa.Super.2004). Both courts construed our decision in *Commonwealth v. Roxberry*, 529 Pa. 160, 602 A.2d 826 (1992) (*Roxberry II*),[2] to compel such a ruling where an alibi instruction is not included in a jury charge. Rather than contest this interpretation of *Roxberry II*, the Commonwealth argues that our own cases on ineffectiveness and the alibi instruction are inconsistent and that we should conclude that a finding of prejudice *per se* is not necessary where an alibi instruction has not been given. We find that the courts below generally have misconstrued the intended breadth of *Roxberry II*. In this case, where trial counsel articulated a reasonable and sound basis for deliberately declining to seek an alibi instruction, we conclude that trial counsel was not constitutionally ineffective. Thus, we hold that competent counsel may waive an alibi instruction where counsel has a reasonable basis for doing so. Accordingly, we reverse.

██ Before taking up the specific circumstances of the case *sub judice*, a brief discussion of the nature and purpose of an alibi instruction is in order. An alibi is "a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." *Roxberry II*, 602 A.2d at 827 (quoting *Commonwealth v. Jones*, 529 Pa. 149, 602 A.2d 820, 822 (1992)). In *Commonwealth v. Pounds*, we held that a trial court, faced with alibi evidence,[3] should instruct a jury generally that "it should acquit if [defendant's] alibi evidence, even if not wholly believed, raise[s] a reasonable doubt of his presence at the scene of the crime at the time of

**2.** In the discussion that follows, substantial reference to the Superior Court decision preceding our decision in *Roxberry II* is required. Accordingly, hereinafter we shall refer to the Superior Court's disposition underlying that appeal, *see* 381 Pa.Super. 314, 553 A.2d 986 (1988), *aff'd*, 529 Pa. 160, 602 A.2d 826 (1992), as *Roxberry I*.

**3.** Although an alibi defense typically is presented with accompanying testimonial or other evidence, "the testimony of the accused may, by itself, be sufficient to raise an alibi defense and entitle him to an appropriate jury instruction." *Pounds*, 417 A.2d at 602.

its commission and, thus, of his guilt." 490 Pa. 621, 417 A.2d 597, 603 (1980) (footnote omitted). The instruction,[4] we held, is critically important to offset "the danger that the failure to prove the defense will be taken by the jury as a sign of the defendant's guilt." *Id.* We explained that the defendant bears no burden of proof in a criminal case, and that to infer guilt based upon a failure to establish an alibi "contravenes the presumption of innocence and the Commonwealth's burden of proving the offense beyond a reasonable doubt." *Id.* at 603 n. 17. Given these concerns, we have held unequivocally that "[a] defendant is entitled to an alibi instruction when evidence of alibi ... has been introduced." *Id.* at 602 (citing *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959)). Further, we held in *Pounds* that "[g]eneral instructions on the Commonwealth's burden of proving each element of the offense beyond a reasonable doubt, the absence of a burden of proof on the defendant, and assessing the credibility of witnesses do not adequately protect against" the danger posed by the misapprehensions a jury might indulge regarding the relevance and effect of alibi evidence. *Id.* at 603.

4. A model alibi instruction follows:

In this case, the defendant has presented evidence of an alibi, that is, that [he][she] was not present at the scene or was rather at another location at the precise time that the crime took place. You should consider this evidence along with all the other evidence in the case in determining whether the Commonwealth has met its burden of proving beyond reasonable doubt that a crime was committed and that the defendant [himself] [herself] committed [or took part in committing] it. The defendant's evidence that [he][she] was not present, either by itself or together with other evidence, may be sufficient to raise a reasonable doubt of [his][her] guilt. If you have a reasonable doubt of the defendant's guilt, you must find [him][her] not guilty. PA. SUGGESTED STD. CRIM. JURY INSTR. § 3.11. Although courts are not bound to utilize this precise instruction, *see Commonwealth v. Ragan*, 560 Pa. 106, 743 A.2d 390, 399 (1999) (declining to require use if the "even if not wholly believed" language used in *Pounds*); *cf. Commonwealth v. Blount*, 538 Pa. 156, 647 A.2d 199, 209 (1994) ("The trial court has discretion in phrasing its instructions to the jury ...."), an alibi instruction should simply "indicate that the failure of the evidence to prove alibi is not evidence of guilt, that the defendant bears no burden to disprove any element of the offense, and alibi evidence may negate proof beyond a reasonable doubt even if it is not wholly believed...." PA SUGGESTED STD. CRIM. JURY INSTR. § 3.11, Adv. Comm. Note.

The material facts underlying Appellee's prosecution are undisputed. On July 23, 1999, at approximately 1:30 a.m., three men, one armed with a shotgun, entered a residence in West Chester, Pennsylvania, in which Devon Mayer was hosting a number of friends. One intruder wore a hooded sweatshirt with the hood cinched to obscure his face; another intruder wore a mask; Appellee, however, did not conceal his face. Appellee seized Mayer and asked her where he could find Bill Fahey. Mayer indicated that Fahey was not present. Another intruder then identified Mayer as Fahey's girlfriend, placed a gun to her head, and demanded drugs and money. Mayer complied.

Eventually, three people, including Mayer, positively identified Appellee as the unmasked intruder. At least two of the identifying witnesses had made Appellee's acquaintance prior to the intrusion, and expressed particular confidence that they recognized his face. A third witness expressed similar certainty in identifying Appellee from a photo array.

Appellee testified on direct examination that, on the night of the alleged crime, he was babysitting his girlfriend's, Johnette Miller's, three young children. Miller also testified that Appellee was caring for the children when she left for worked at approximately 10:30 p.m., and that this was consistent with their normal routine. On cross-examination of Miller, the Commonwealth asked: "So after 10:30 p.m. and until after 7:00 in the morning, you have absolutely no idea where [Appellee] was; is that correct?" Notes of Trial Testimony Vol. II, 2/16/2000, at 243–44. She replied that she called home during her break and Appellee answered the phone.

In response to this testimony, the Commonwealth immediately sought a sidebar conference. It contended that the defense previously had indicated that Miller's testimony would not amount to an alibi, and that her testimony therefore had violated Pa.R.Crim.P. 573, which requires a defendant to file a pre-trial notice "specifying the intention to claim [an alibi] defense," containing "specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of witnesses

whom the defendant intends to call in support of such claim." Pa.R.Crim.P. 573(C)(1)(a).[5] The defense maintained that the Commonwealth had opened the door to alibi evidence when, during cross-examination, it elicited testimony regarding the telephone call between Miller and Appellee. The trial court agreed and indicated that it would not strike the testimony.[6] Defense counsel then stated that he did not intend to seek an alibi instruction, in any event.

Following the evidence, the trial court charged the jury generally but did not provide a specific instruction addressing Appellee's alibi evidence. The jury convicted Appellee of two counts of robbery; five counts of reckless endangerment; and one count each of terroristic threats, burglary, and criminal conspiracy.[7] On Appellee's direct appeal of his judgment of sentence, the Superior Court affirmed. *See Commonwealth v. Hawkins*, 769 A.2d 1204 (Pa.Super.2000). Appellee did not seek our review of the Superior Court's ruling at that time.

Thereafter, Appellee sought timely post-conviction relief under the PCRA. In his petition, Appellee asserted five bases for relief, each alleging ineffective assistance of counsel (IAC). Among these bases, Appellee argued that counsel had been ineffective for failing to seek—or object to the court's omission

5. In the event that Rule 573(C)(1)(a) is violated,

 the court at trial may exclude the testimony of any omitted witness, or may exclude entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant, or may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require.

 Pa.R.Crim.P. 573(C)(1)(d).

6. We find this ruling perplexing. Although on direct examination defense counsel asked only whether Appellee had been home when Miller left for work, around 10:30 p.m., the relevance of this evidence inheres, if at all, in its indirect corroboration of Appellee's own testimony regarding his whereabouts at the time of the crime. Thus, it would seem, either this evidence simply was irrelevant and inadmissible, *see* Pa.R.E. 401, 402, or it was, in effect, alibi evidence subject to the notice requirement stated in Rule 573. The propriety of this ruling, in any case, is not before us, and insofar as the corroborative effect of the testimony adduced on direct examination was minimal, we decline to consider the matter further.

7. 18 Pa.C.S. §§ 3701, 2705, 2706, 3502, 903 (respectively).

of—a specific jury charge concerning his alibi evidence. At the PCRA hearing, trial counsel explained, in great detail, why he opted not to seek an alibi instruction.

It's been my practice generally having tried, many, many cases involving alibis, that in speaking to jurors after trials, jurors have an impression that an alibi means that you are bringing in independent witnesses, that's what their connotation, what they understand it to be. And even in cases where I have other witnesses coming in as alibi [witnesses], jurors generally look for something a little better than [a] family member or whatever.

I don't like to give jurors the impression that they [should] be looking for that type of thing when [they] hear the word alibi. They are either going to believe the defendant or not. There are instructions on credibility. They are either going to believe he was there or not there. In my opinion, at least, you don't need that extra, what could be a confusing factor of [an] instruction on alibi when only the defendant is testifying.

Now, it's just my personal preference in how I like to try a case.... [W]hen you mention alibi, [jurors] are looking for that independent alibi witness, or time sheets from work, or something that really shows someone was definitely somewhere else at the time of the incident. I'd rather not confuse them and let them think if you are mentioning alibi why isn't there this other corroboration at the time. They are looking for corroboration of where you were, as opposed to you saying I wasn't there. That's my impression talking to juries for some 20 years of practice.

Notes of PCRA Testimony (N.P.T.), 12/18/02, at 17–18. On cross-examination, moreover, the following exchange between PCRA counsel and trial counsel occurred:

[Q] Is it not true in your experience in trying criminal cases that one presumes that jurors follow instructions from the judge?

A We presume that. But in my discussions with them, that's not always true.

Q Not even hypothetically, but in this particular case an alibi instruction is a strong instruction; is it not?

A I guess it depends how you look at it, it can be.

Q In that a defendant would benefit from an instruction which said even if the defense has failed to fully prove an alibi, an alibi can create a reasonable doubt, an imperfect alibi can create a reasonable doubt?

A From a practical standpoint, I will tell you most courts right now are not giving that part of the instruction they are not required to. [The part] that says if not wholly believed. [8] I will tell you I have asked for that instruction repeatedly [from] a number of courts in the past four, five years and they are not giving that part of it, nor are they required to.

So, again, I don't look at it [just in] terms of the legal principle. [An] [a]libi defense certainly can be strong. I look at it from what evidence am I presenting that's going to support that defense. And, again, if I only have my defendant testifying, the jury is either going to believe him or not believe him. I don't like to confuse them with the alibi instruction. It may be right or wrong. I don't know. It's a judgment call.

N.P.T., 12/18/02, at 20–21. Notwithstanding trial counsel's lengthy and persuasive explanation for his decision not to seek the instruction, the PCRA court agreed with Appellee, and ruled that he was entitled to a new trial due to trial counsel's ineffectiveness in failing to request, or to object to the absence of, an alibi instruction. Citing our decision in *Roxberry II* for the proposition that any time alibi evidence of any sort is introduced a corresponding instruction is required, the trial court concluded that there was "no intellectually defensible way of distinguishing *Roxberry [II]* from this situation." Trial Court Slip. Opinion, 1/8/03, at 4.[9]

8. *See Commonwealth v. Ragan,* 560 Pa. 106, 743 A.2d 390, 399 (1999).

9. Appellee's four other assertions of IAC relied upon counsel's alleged failures: 1) to seek severance of Appellee's trial from his codefendant's trial; 2) to seek suppression of certain evidence; 3) to object to testimony infringing on Appellee's right to remain silent; and 4) to

■ The Superior Court affirmed on the same basis as the trial court, with one judge concurring in the result and writing separately. The majority began by noting the three-pronged IAC standard set forth by this Court in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). In order to establish ineffective assistance of counsel, appellant must demonstrate that (1) his claims have arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) counsel's action or inaction prejudiced appellant. *Id.* at 975; *see Commonwealth v. Allen*, 557 Pa. 135, 732 A.2d 582, 586 (1999).[10] The lower court, however, found that *Roxberry II* in effect short circuits the *Pierce* test because *Roxberry II* "does not permit either a finding that Appellee was not prejudiced or a finding that counsel had a reasonable strategy." *Hawkins*, 848 A.2d at 957. Acknowledging that counsel "had several reasons for not requesting the instruction," *id.* at 959, the court nonetheless concluded that those reasons had been deemed unreasonable in our prior cases. Instead, the court held, it simply "is not a reasonable strategy to forego an alibi instruction to focus on another defense." *Id.* at 960. Accord-

object to the Commonwealth's insinuation that Appellee had a motive to lie. The trial court couched its grant of a new trial solely on the alibi instruction, but summarily indicated that it considered baseless these other four assertions of IAC. Given our ruling that the PCRA court and Superior Court erred in granting Appellee a new trial for the court's failure to provide an alibi instruction over the defense's preference, we trust that the PCRA court will attend duly to these alternative allegations of IAC on remand.

10. The *Pierce* standard is coextensive with the two-prong "performance and prejudice" approach promulgated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which set forth the following inquiry:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

ingly, it found that *Roxberry II* and progeny required a ruling that trial counsel's decision not to seek the instruction had prejudiced Appellee as a matter of law. Thus, noting its "reservations" about the inflexibility of the rule it found in our cases, especially in light of what it viewed as "overwhelming" evidence of Appellee's guilt, the Superior Court majority affirmed the PCRA court's ruling that trial counsel had been ineffective and a new trial was required.

In reviewing the Superior Court's decision to affirm a trial court's order granting post-conviction relief due to trial counsel's ineffectiveness, we must determine whether the PCRA court's ruling is supported by the record and free from legal error. *Allen,* 732 A.2d at 586. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review. *Commonwealth v. Spotz,* 582 Pa. 207, 870 A.2d 822, 830 (2005). In establishing the reasonable basis and arguable merit aspects of the *Pierce* inquiry, trial counsel's error or omission "must have so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." *Allen,* 732 A.2d at 587 n. 15; *see* 42 Pa.C.S. § 9543(a)(2)(ii). The PCRA standard for IAC is no more demanding than the IAC standard applied on direct appeal. *Allen,* 732 A.2d at 586 n. 15 (citing *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326 (1999)).

The Commonwealth notes that the Superior Court in this case observed that the evidence of Appellee's guilt was "overwhelming," and that Appellee would have been unable to satisfy the prejudice prong of the *Pierce* test. *Hawkins,* 848 A.2d at 961. Instead, the Commonwealth points out, the court ruled that our decision in *Roxberry II* "virtually compelled [the court] to presume prejudice, notwithstanding the quantum of evidence presented against him, when the defendant does not receive an alibi instruction." *Id.* at 960.

The Commonwealth argues that this ruling is in error, and, in support of this assertion, relies upon our rulings in the related context of the "no-adverse-inference" jury instruction,

to which a defendant is entitled when he declines to testify in his own defense.[11] *See generally Commonwealth v. Howard,* 538 Pa. 86, 645 A.2d 1300 (1994). Although a criminal defendant has a constitutional right to such an instruction where he has declined to testify, the Commonwealth notes, an assertion of IAC for failure to request such an instruction cannot succeed unless the defendant makes the requisite three-prong showing, including a demonstration of prejudice. *See id.* at 1304. The Commonwealth asserts that the adverse inference instruction, which implicates the constitutional Fifth Amendment right not to testify against one's own interests, is at least as important as an alibi instruction, which implicates no constitutional right beyond the general entitlement to adequacy of counsel. Thus, the Commonwealth maintains, a defendant asserting IAC for failing to request an alibi instruction should be tested by the same standard without the benefit of *per se* satisfaction of any of its three prongs.

The Commonwealth does not contest the lower court's ruling that the first IAC prong under *Pierce,* requiring a demonstration that the underlying claim has arguable merit, is met in this case. Further, the Commonwealth admits, as it must, that Pennsylvania has no shortage of caselaw finding IAC where counsel fails to seek such an instruction, *see, e.g., Commonwealth v. Mikell,* 556 Pa. 509, 729 A.2d 566 (1999); *Roxberry II,* 529 Pa. 160, 602 A.2d 826; *Commonwealth v. Gainer,* 397 Pa.Super. 348, 580 A.2d 333 (1990), and finding reversible error where a trial court refuses to provide such an instruction upon request, *See, e.g., Pounds,* 490 Pa. 621, 417 A.2d 597. The Commonwealth maintains, however, that these cases are distinguishable. We agree, and so turn to those cases that the panel majority below believed left it no discretion to consider the reasonableness of counsel's conduct and

11. A model no-adverse-inference instruction provides:
 It is entirely up to the defendant in every criminal trial whether or not to testify. [He][She] has an absolute right founded on the Constitution to remain silent. You must not draw any inference of guilt, or any other inference adverse to the defendant, from the fact that [he] [she] did not testify.
 PA. SUGGESTED STD. CRIM JURY INSTR § 3.10A.

the prejudice caused Appellee by counsel's failure to request such an instruction.

In support of its ruling, the Superior Court cited our decisions in *Roxberry II* and *Mikell.* In *Roxberry II,* this Court held trial counsel ineffective for failing to object to the trial court's omission of an alibi instruction. In that case, defendant testified that at the relevant time he was a half-mile from the scene of the crimes of which he stood accused. 602 A.2d at 826. The trial court instructed the jury by reciting the evidence and offering a standard reasonable doubt instruction, which acknowledged defendant's alibi testimony but failed specifically to address how the jury should weigh defendant's alibi evidence. *Id.* at 827. After the Superior Court affirmed his judgment of sentence on direct appeal, defendant sought collateral relief under the PCHA [12] alleging trial counsel ineffectiveness for failure to object to the jury charge for want of a satisfactory alibi instruction. *Id.* The PCHA court denied relief, but the Superior Court reversed, vacated the judgment of sentence, and remanded for a new trial. The Commonwealth appealed. *See id.*

Before this Court, the Commonwealth argued that defendant's uncorroborated testimony did not constitute an alibi properly understood, and therefore did not require an alibi instruction. *Id.* at 828. We rejected, under *Pounds,* any suggestion that, in order to constitute an alibi for legal purposes, alibi testimony requires corroboration. *Id.* at 828 ("It is not, and never has been, necessary for an alibi defense to be corroborated in order to constitute an alibi."); *see Pounds,* 417 A.2d at 602 ("Although an alibi defense is generally presented with accompanying alibi witnesses or other evidence placing the defendant at a place other than the scene of the crime at the time of its commission, the testimony of the accused may, by itself, be sufficient to raise an alibi defense and entitle him to an appropriate jury instruction."). Acknowledging that the credibility of alibi evidence tends to hinge on at least some

---

12. The Post Conviction Hearing Act, Act of January 25, 1966, P.L. 15 80, § 1, as amended, 19 P.S. §§ 1180–1, *et seq.,* is the predecessor to the PCRA.

degree of corroboration, we clarified that evidentiary support for an asserted alibi goes to its weight but does not affect its character as alibi evidence.

> Because credibility is indisputably the exclusive province of the jury, we cannot properly permit a judge, under the guise of exercising discretion, to remove the alibi issue from the jury merely because the judge finds the evidence incredible. We do not ordinarily doubt a jury's capability of resolving difficult factual questions. Many, if not most, trials require the jury to make extremely meticulous and discriminating assessments of credibility. This jury function is fundamental to our jurisprudence. There is no reason, in the realm of alibis, to abandon our trust in jury verdicts and to grant discretion to a trial judge to deliver or withhold an alibi charge depending on his personal assessment of credibility.

*Roxberry II,* 602 A.2d at 828–29.

Notably, in *Roxberry II* we did not explicitly address trial counsel's PCHA hearing testimony concerning his basis for not objecting to the absence of an alibi instruction in the jury charge at trial. According to the underlying Superior Court opinion, however, trial counsel testified "that he probably had failed to make a request for the required instruction because the disinterested alibi witness had failed to appear." *Roxberry I,* 553 A.2d at 989. Nevertheless, we found the defendant's testimony standing alone sufficient to establish an alibi defense. *Roxberry II,* 602 A.2d at 828. Accordingly, we held that the evidence, "corroborated or not, . . . entitle[d] him to an alibi instruction." *Id.* Finding counsel's failure to seek an alibi instruction "inexplicable," we upheld the Superior Court's ruling that counsel had been ineffective and affirmed its order granting a new trial. *Id.* at 829.

In *Mikell* we addressed a similar issue. There, a capital defendant submitted an alibi defense at trial through the testimony of his mother and sister, both of whom asserted that defendant was sleeping at his mother's home at the time of the crime in question. 729 A.2d at 568. At the close of trial, defense counsel did not request an alibi instruction, the court

did not instruct the jury regarding its consideration of this alibi testimony, and counsel failed to object to the trial court's jury charge on these bases. *Id.*

On direct appeal, we considered whether trial counsel's failure affirmatively to request, or object to the absence of, such an instruction constituted IAC. *Id.* at 570. Notably, we began our analysis by invoking without reservation the three-prong IAC test articulated by this Court in *Pierce.* *Id.* Noting the testimony of two alibi witnesses as well as the Commonwealth's failure to suggest that these did not furnish an alibi defense, we quickly determined that defendant's claim had arguable merit. *Id.*

Next, we considered the Commonwealth's argument that defense counsel had a reasonable basis for declining to seek the instruction. The Commonwealth claimed that trial counsel reasonably could have declined such an instruction because "his witnesses were not 'particularly compelling' " and because the instruction might have distracted the jury from the critical issue of the credibility of the principal witness for the prosecution. *Id.* We rejected this assertion not because we found it unavailing as a matter of law, but because we found that the contention was "not supported by the record." *Id.* In a footnote we observed that,

> [a]lthough the trial court mentioned during the argument on post-verdict motions that it recalled trial counsel stating that he did not seek an alibi instruction "because it would be totally unbelievable," as the trial court later noted, the record does not reflect any such statement, and it was not relied upon in the denial of post-verdict relief. It is also noteworthy that post-verdict counsel requested the opportunity to present testimony from trial counsel on this issue, which request the trial court denied.

*Id.* at 570 n. 4. "Consequently," we continued, "we can discern no reasonable basis for counsel's dereliction." *Id.* at 571. This statement, our most recent on-point, hardly lends credence to the Superior Court's conclusion that declining to seek an alibi instruction can have no reasonable basis as a matter of law. Observing no reasonable basis under the facts of a

particular case is a far cry from denying that any case might reveal a reasonable basis for the behavior in question; indeed, it is far more consistent with the converse proposition that we anticipated then that a reasonable basis might emerge in a future case.

In keeping with our thorough application of the *Pierce* test, we then considered the Commonwealth's claim that defendant had failed to demonstrate prejudice arising from counsel's failure to request the alibi instruction. We rejected this argument, however, because it "fail[ed] to acknowledge that one of the purposes of an alibi instruction is to ensure that a jury does not interpret the failure to prove the defense as evidence of a defendant's guilt," and because the court's failure to instruct the jury on how to assess the alibi evidence in question "effectively deprived [him] of a substantive defense." *Id.* "Under the circumstances," we concluded, "counsel's **inexplicable** failure to request an alibi instruction constituted constitutionally ineffective assistance of counsel." *Id.* (emphasis added). Further, we declined to remand the case for the taking of further evidence, as the Commonwealth requested in the alternative, because we considered it so "clear from the record that counsel was ineffective" that no remand was warranted. *Id.* at 571 n. 5.[13]

We pause as well to consider our decision in *Commonwealth v. Pounds*, which has been relied upon to some extent in each of the cases subject to the foregoing discussion. In *Pounds*, we held that "[w]here an alibi defense is presented, [an alibi] instruction is necessary due to the danger that the failure to prove the defense will be taken by the jury as a sign of the defendant's guilt." 417 A.2d at 603. In that case, however, matters of ineffectiveness were not before this Court because

---

**13.** In *Commonwealth v. Kolenda,* as well, this Court set forth the *Pierce* test without reservation in analyzing an assertion of IAC predicated on counsel's putative failure to seek an alibi instruction. 544 Pa. 426, 676 A.2d 1187, 1189–90 (1996). In that case, however, this Court concluded that appellant's assertion lacked arguable merit in light of the record, and so did not evaluate the second and third prongs of the *Pierce* test.

counsel had requested the instruction and the trial court had denied the request.

We conclude that the "necessity" referred to in *Pounds* is tantamount to the "entitlement" discussed in our more apposite cases; a defendant's *entitlement* to such an instruction indeed imposes a *necessary* burden on the trial judge to the extent the *entitlement* is duly invoked. Nowhere in *Pounds,* however, did we suggest that it is *necessary* for counsel to request such an instruction.[14] Thus, *Pounds* does not stand for the proposition the Superior Court finds in our cases: that, in all cases involving the presentation of alibi evidence, a trial court must provide an alibi instruction notwithstanding the defense's contrary preference. Moreover, neither *Pounds* nor *Roxberry II* nor *Mikell* holds that the alibi instruction is so sacrosanct as to abrogate the IAC test espoused under *Pierce.* To the contrary, in *Mikell,* we applied that very test. Although we found it satisfied under the circumstances of that case, we neither suggested, nor "virtually compelled," *Hawkins,* 848 A.2d at 960, that prejudice will be found in such cases as a matter of law.

This understanding of *Pounds* and *Mikell, inter alia,* was reflected in the Honorable Justin M. Johnson's prescient dissenting opinion in *Commonwealth v. Gainer,* 397 Pa.Super. 348, 580 A.2d 333 (1990), *appeal denied,* 529 Pa. 645, 602 A.2d 856 (1992). In that case, the panel majority found, in effect, a *per se* rule requiring a finding of IAC where counsel failed to request an alibi instruction. *Id.* at 337. Judge Johnson noted that the *per se* rule, as such, appeared first in the Superior Court's decision in *Commonwealth v. Brunner,* 341 Pa.Super. 64, 491 A.2d 150 (1985), in which the court relied on this Court's decision in *Pounds* and its own decision in *Commonwealth v. Van Wright,* 249 Pa.Super. 451, 378 A.2d 382 (1977). *Gainer,* 580 A.2d at 339 (Johnson, J., dissenting). He questioned the court's reliance on those cases in *Brunner,* howev-

---

14. *Pounds,* too, relied on the word "entitlement" as we use it in this opinion. *See Pounds,* 417 A.2d at 602 ("A defendant is **entitled** to an alibi instruction when evidence of alibi, as defined above, has been introduced." (emphasis added)).

er, observing that in both *Pounds* and *Van Wright* counsel had requested alibi instructions that the trial court had refused. He distinguished those cases from *Brunner* and from *Gainer* because in neither of those cases had the court affirmatively declined to deliver such a charge when it had been requested. Rather, in neither *Brunner* nor *Gainer* had counsel requested such an instruction. His reasoning for rejecting a *per se* rule denying defense counsel, on any basis, the prerogative not to pursue such an instruction warrants reproduction:

> If I understand the thrust of *Brunner*, [*Commonwealth v. Nauman*, 345 Pa.Super. 457, 498 A.2d 913 (1985)], and *Roxberry [I]*, those cases conclude that there can be no reasonable basis for not wanting an alibi charge, and that this decision is too important to be left to the defendant and defense counsel. I cannot agree.
>
> Moreover, if the *per se* command of [*Roxberry I*] is to be followed, it would appear that the "prejudice" review found in *Strickland v. Washington[*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),] and carried forth in this jurisdiction in [*Pierce*] would no longer apply, even where defense counsel finds the alibi testimony incredible, as in *Brunner*. I seriously doubt that our Supreme Court would sanction this.

*Gainer*, 580 A.2d at 340 (Johnson, J., dissenting).[15]

Judge Johnson then, in a move tracked by the Commonwealth in its argument to this Court in the instant case, considered the similarities between the alibi instruction and the no-adverse-inference instruction, and contrasted his reading of the Superior Court's alibi instruction cases with then recent developments in the context of the no-adverse-inference instruction. Noting the Superior Court's decision in *Commonwealth v. Rasheed*, 392 Pa.Super. 280, 572 A.2d 1232

**15.** Judge Johnson noted that his references to *Roxberry I* occurred in part because, at that time, the Superior Court's ruling in that case had been granted allowance of appeal by this Court and was pending our disposition.

(1990) (*en banc*),[16] Judge Johnson drew the following distinction:

> Where a criminal defendant does *not* testify, and specifically requests the court *not* to charge that he has the right not to testify and that no adverse inference may be drawn from his failure to take the witness stand, we have held that it is error for the court to give the instruction concerning a defendant's right to remain silent.

Our rationale in *Rasheed* was that defense counsel and his or her client should be able to decide [whether] they want the jury to focus on the fact that the defendant has not testified. We recognized that the jury will be aware of this fact, but in some cases the defendant may not want this highlighted. Similarly, in those cases involving an alibi defense, I believe that the defendant and defense counsel should not be deprived of the right to control trial strategy.

**16.** In *Rasheed*, the Superior Court acknowledged the defense's prerogative to decline a no-adverse-inference instruction, 572 A.2d at 1235, but found the trial judge's no-adverse-inference charge to the jury, which defied the defense's request that no such instruction be given, to be harmless error. *Id.* at 1236. On review, this Court reversed, finding that the Superior Court erred in concluding that the error was harmless. *Commonwealth v. Rasheed*, 536 Pa. 567, 640 A.2d 896, 899 (1994).

In *Commonwealth v. Edwards*, 535 Pa. 575, 637 A.2d 259 (1993), we held prospectively that where a trial court provides a no-adverse-inference instruction to the jury over the defense's explicit request that no such instruction be given, the court commits *per se* reversible error. *Id.* at 261. Because the Superior Court's decision in *Rasheed* predated our ruling in *Edwards*, however, in our review of *Rasheed* we employed the previously applicable harmless error analysis.

Most recently, in *Commonwealth v. Garcia*, 585 Pa. 160, 888 A.2d 633, 2005 WL 3536089 (2005), we reconsidered *Edwards* in a case where co-defendants tried jointly differed regarding the no-adverse-inference instruction, with one co-defendant asking that the court provide such an instruction and the other co-defendant citing *Edwards* in support of his preference not to have such an instruction given. We held that, while one's right to such an instruction is constitutional in nature, the "right" to decline such an instruction is not constitutional, and thus must yield to the former right where co-defendants differ regarding whether to request a no-adverse-inference instruction. *Id.* 2005 WL 3536089 at *4, 888 A.2d 633 ("A defendant's right to receive the charge trumps his co-defendant's right to decide his or her trial strategy.").

*Gainer*, 580 A.2d at 340 (Johnson, J., dissenting) (citations omitted). Judge Johnson thus decried the majority's move "away from the autonomy of the defendant and defense counsel without any clear enhancement of the administration of justice." *Id.* (Johnson, J., dissenting); *cf. Commonwealth v. Garcia*, 585 Pa. at 167, 888 A.2d at 638, 2005 WL 3536089, at *4 (Pa. Dec.27, 2005) (noting that the defendant is best positioned to determine whether a no-adverse-inference instruction will be most likely to prevent the jury from considering the defendant's silence to be evidence of guilt). Relying on the court's "obligation ... to examine the entire jury charge as a whole to determine whether it was fair or prejudicial," Judge Johnson would have approved the instruction given in *Gainer*, notwithstanding the absence of a specific charge addressed to the alibi evidence. *Id.* (citing, *inter alia, Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61, 70 (1983)).

The Commonwealth, in particular, draws our attention to our ruling in *Commonwealth v. Howard*, which warrants discussion in precisely the connection suggested by Judge Johnson. In *Howard*, a defendant convicted of capital murder asserted IAC predicated on counsel's failure to request a no-adverse-inference jury charge. 645 A.2d at 1305–06. Counsel had made no conscious decision not to request the instruction, but rather had only realized his failure to request such a charge upon the court's adjournment following its jury charge, which proved too late to remedy the omission when the jury returned a swift verdict. *Id.* at 1306.

We began our analysis by confirming that the court's failure to charge the jury as requested constituted a denial of defendant's constitutional rights under Article I, § 9, of the Pennsylvania Constitution,[17] and that the violation did not consti-

17. Article I, § 9 (Rights of accused in criminal prosecutions), provides, in relevant part:
> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to

tute harmless error. *Id.* (citing *Commonwealth v. Lewis,* 528 Pa. 440, 598 A.2d 975 (1991)). Accordingly, we found arguable merit in defendant's assertion of IAC.

Next, we held that counsel had no reasonable basis for his omission, admittedly the product of oversight rather than any affirmative tactic intended to serve defendant's interests. *Id.* at 1307. We noted, however, that "*not* requesting the no-adverse-inference charge may in certain circumstances be a reasonable course of conduct." *Id.* (citing *Commonwealth v. Edwards,* 535 Pa. 575, 637 A.2d 259 (1993); *Lewis,* 598 A.2d at 983 n. 14) (emphasis in original).

Finally, we addressed our attention to *Pierce's* prejudice prong. We emphasized that *Pierce's* demands in this regard are far more stringent than the demands of a harmless error analysis, *id.,* and observed that defendant bore the burden of proof of prejudice.[18] *Id.* at 1308. Rejecting defendant's bald citation to *Lewis,* we noted that

> give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.

**18.** The Commonwealth also maintains that the Superior Court erroneously employed a harmless error analysis *in lieu* of the IAC standard this Court adopted in *Pierce.* In *Pierce,* with regard to assessing counsel's basis for acting as he did, we noted that a court "may not utilize a harmless error analysis" in examining those alternative courses counsel did not pursue, but rather may examine the alternatives "only as a means of determining whether the course chosen had some reasonable basis." 527 A.2d at 976 (quoting *Commonwealth v. Badger,* 482 Pa. 240, 393 A.2d 642, 644 (1978)). Under *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978), however, we held that "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Id.* at 162. The gravamen of the Commonwealth's argument is that while harmless error analysis vests benefit of the doubt with the defendant, subject to the prosecution's demonstration that the error is harmless, the IAC standard, contrarily, presumes competency of counsel subject to the defendant's showing that "counsel's ineffectiveness was of such magnitude that it 'could have reasonably had an adverse effect on the outcome of the proceedings.'" *Howard,* 645 A.2d at 1307 (quoting *Pierce,* 527 A.2d at 977). The Superior Court did not explicitly rely on harmless error analysis in the case at bar. Because our ruling sounds in other, more apposite precedent, we find it unnecessary to address this aspect of the Commonwealth's argument.

*Lewis* ... in and of itself does not answer the question whether a defendant is *prejudiced* by his or her attorney's failure to request the no-adverse-inference charge. **Lewis stands for the proposition that it can never be harmless error for the trial court to fail to give the charge if it is timely requested by counsel. However, ... it is not axiomatic that what can never be harmless error by the trial court equates to ineffective assistance of counsel.**

*Id.* (boldface added; italics in original); *see also Schmitt v. State,* 140 Md.App. 1, 779 A.2d 1004, 1023 (Ct.Spec.App.2001), *appeal denied,* 367 Md. 88, 785 A.2d 1291 (2001) ("The entitlement to an instruction if you want one does not imply that you are derelict for not wanting one.").

The majority below, in questioning the gravamen of its reading of *Roxberry II,* implicitly endorsed the reasoning this Court has employed in the context of no-adverse-inference jury charges applying *Pierce* and declining to find *per se* prejudice in counsel's failure to request such an instruction. Citing with approbation Judge Johnson's *Gainer* dissent, and noting that "[i]n the weightier framework of a constitutional right, the right to remain silent, the courts [do] not apply a prejudice *per se* standard," *Hawkins,* 848 A.2d at 961, the majority expressed understandable "reservations about an approach that abandons the third leg of the ineffective assistance of counsel test merely because an alibi instruction was not given when such an approach is not even employed in a context where an instruction is constitutionally mandated." *Id.* at 962. Notwithstanding these concerns, however, the lower court deferred to what it believed to be this Court's rigid pronouncement in *Roxberry II* that counsel's failure to insist on an alibi instruction constituted *per se* reversible error.

The Honorable Peter Paul Olszewski, concurring in the result, differed from the majority regarding the putative similarity of the no-adverse-inference instruction to the alibi instruction here at issue, and declined to subscribe to the majority's reservations. *Hawkins,* 848 A.2d at 962 (Olszewski, J., concurring). Judge Olszewski's opinion that the two in-

structions differ fundamentally offers an opportunity further to consider the analogy and its limitations.

A no-adverse-inference instruction is given to protect the rights of a criminal defendant when that defendant does *not* testify. Accordingly, there is no testimony from the defendant for the jury to inappropriately use during deliberations. Further, our Supreme Court has recognized that the instruction may not be required in all cases.

\* \* \* \*

Contrary to the "no-adverse-inference" instruction, the alibi instruction was designed to guide the jury in analyzing evidence *actually presented.*

*Id.* at 963–64 (Olszewski, J., concurring) (emphasis in original).

While there is some appeal to the distinction, we are not persuaded. A defendant's decision not to testify in his own defense is the proverbial 800–pound gorilla looming in the corner, and while this decision does not constitute affirmative evidence, neither does it escape the notice of many juries. *See Garcia,* 585 Pa. at 169, 888 A.2d at 639, 2005 WL 3536089, at \*5 (Castille, J., concurring) ("[T]he jury cannot help but notice when the defendant fails to testify, and it is perceived human nature to think unfavorably of silence in the face of criminal prosecution."); *Gainer,* 580 A.2d at 340 (Johnson, J., dissenting). Indeed, the assumption that juries note a defendant's failure to testify animates the defendant's constitutional entitlement to the no-adverse-inference instruction. *See Carter v. Kentucky,* 450 U.S. 288, 301, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981) (noting that, in the absence of a no-adverse-inference instruction, the jury may be "left to roam at large with only its untutored instincts to guide it, to draw from the defendant's silence broad inferences of guilt"); *Garcia,* 585 Pa. at 169, 888 A.2d at 639, 2005 WL 3536089, at \*4 (distinguishing the constitutional right to a no-adverse-inference instruction from the non-constitutional right to decline such an instruction).[19]

19. Our reading of Judge Olszewski's opinion also is tempered by its substantial reliance on its understanding, shared with the majority below, that our opinions in *Pounds* and *Roxberry II* determined that prejudice attaches *per se* to counsel's failure to request an alibi instruc-

Having concluded that our cases have never found as a matter of law that counsel can have no reasonable basis for failure to request an alibi instruction or that counsel's failure to request that instruction constitutes prejudice *per se*, we are left only to apply the *Pierce* test to the facts of the case at bar as we did in *Mikell* and *Kolenda*. Neither the Commonwealth nor the courts below dispute the arguable merit of Appellee's assertion of IAC. Given the frequency with which we have found IAC for counsel's failure to seek an alibi instruction, Appellee plainly established arguable merit in satisfaction of *Pierce's* first prong.

 Next, we must consider whether counsel had a reasonable basis for neither seeking such an instruction nor objecting when one was not forthcoming. In a collateral attack on the effectiveness of trial counsel, we presume "that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of the defendant's Sixth Amendment right to counsel." *Commonwealth v. Gribble*, 580 Pa. 647, 863 A.2d 455, 472 (2004) (quoting *Howard*, 645 A.2d at 1307). In *Commonwealth v. Buehl*, we elaborated on the reasonable basis standard:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that the trial counsel's decision had any reasonable basis.

510 Pa. 363, 508 A.2d 1167, 1174 (1986) (quoting *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349, 352–53 (1967)) (emphasis in original). In *Edwards*, in the context of counsel's decision whether to request a no-adverse-inference-instruction, we held that it was most prudent to

tion, thus vitiating *Pierce's* prejudice analysis. As we have emphasized in the foregoing discussion, however, our cases have never stated such an inflexible rule.

"allow the defendant to decide whether the instruction should be given in any particular case. The desirability of the instruction is a matter of trial strategy, and will therefore vary from case to case." 637 A.2d at 260–61 (internal quotation marks omitted). "Normally," we noted, "defendant's attorney would make this decision and this is how it should be." *Id.* at 261. Similarly, in *Commonwealth v. Sullivan,* we held that "It is well settled that whether to object to the trial court's charge, to request clarification of the charge, or to request additional points for charge is one of the tactical decisions within the exclusive province of counsel." 450 Pa. 273, 299 A.2d 608 (1973) (internal quotation marks omitted). Quite recently, in *Garcia,* we noted once again that the decision whether to seek a jury instruction to which a defendant is entitled is a matter of trial strategy that lies in the discretion of trial counsel. 585 Pa. at 168, 888 A.2d at 638, 2005 WL 3536089, at *4 (citing *Edwards,* 637 A.2d at 261–62). In areas of trial strategy, moreover, we impute counsel's reasonable basis to his client. *Sullivan,* 299 A.2d at 611 (citing *Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965)).

Distinguishing this case from those cases interpreted by the lower court is the detailed record in the instant case of trial counsel's rationale for consciously declining to seek the instruction. As noted early in this opinion, counsel explained that in his twenty years of experience he had come to the conclusion that where alibi testimony is weak, or is predicated on the defendant's testimony alone, calling attention to that testimony explicitly as alibi evidence disserves the defendant's interests. Notably, he did not suggest that such testimony itself serves no purpose, nor did he suggest that counsel should not highlight alibi evidence for the jury in closing. He simply expressed his discomfort, under the circumstances at bar, with the expectations a specific alibi instruction might raise in the minds of the venire, and explained that it was his practice to avoid disappointing such expectations where possible. We would be hard-pressed to find a better exemplum of counsel expressing a reasonable basis for declining, as a

tactical matter, to avail himself of a particular jury instruction to which his client unequivocally was entitled.

The Superior Court's opinion, moreover, offers no refutation. In its focus on what it took to be the *per se* prejudice import of our prior rulings in this area, it offered little comment on counsel's reasonable basis, noting simply that precedent "states it is not a reasonable trial strategy to forego an alibi instruction to focus on another defense." *Hawkins*, 848 A.2d at 960. The PCRA court, as well, ruled that *Roxberry II* compelled a new trial, thus anticipating with the Superior Court's subsequent conclusion that there can be no reasonable basis for declining to seek the instruction. We reject this account of our precedent. Instead, based upon the colloquy reproduced, *supra*, we conclude that counsel had a reasonable basis, based upon extensive experience and a nuanced consideration of the peculiar circumstances of Appellee's case, not to seek an alibi instruction. *See Commonwealth v. Garrity*, 509 Pa. 46, 500 A.2d 1106, 1110 (1985) ("A court may not substitute its judgment for trial counsel's. The reasonableness of the choice may not be judged with the benefit of hindsight, but only from trial counsel's perspective."); *cf. Garcia*, 585 Pa. at 168, 888 A.2d at 638, 2005 WL 3536089, at *4 (quoting *Edwards*, 637 A.2d at 261) ("[I]t is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate.").[20]

**20.** Formally, our ruling that counsel had a reasonable basis for declining to seek such a jury charge ends the inquiry, since *Pierce's* three-prong IAC standard is satisfied only when all three elements are established. *See Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 855 (2003); *Buehl*, 508 A.2d at 1174. Nevertheless, we note that the Super Court made fast work of the question of prejudice:

Appellee did not have any covering on his face during the robbery. Four victims identified him. One eyewitness had known Appellee her whole life and saw Appellee in the company of his accomplice … fifteen minutes before the robbery. The evidence in this case simply was overwhelming, and if the law permitted us to properly apply the test for establishing the ineffective assistance of counsel, we would easily conclude that counsel's action did not prejudice Appellee. *Hawkins*, 848 A.2d at 961. Contrary to the lower courts' respective understandings, we emphasize that the law not only permits the application the *Pierce* test in its entirety, but indeed compels it. *See Mikell*, 556 Pa. 509, 729 A.2d 566; *Kolenda*, 544 Pa. 426, 676 A.2d 1187.

Certainly, our precedent and that of the United States Supreme Court reflect a strong inclination to find prejudice where such an instruction, when it is warranted by the evidence, is not requested, and counsel fails to provide a reasonable basis for not seeking the instruction. Notably, we also have manifested our unease with imputing to counsel a reasonable basis for declining such an instruction where such a basis has not been forwarded by counsel. *Cf. Garcia*, 585 Pa. at 169, 888 A.2d at 639, 2005 WL 3536089, at *5 (Castille, J., concurring) ("A decision not to have the court instruct the jury to draw no adverse inference from the defendant's silence is a risky trial strategy."). We decline to forge a *per se* rule, however, where we can anticipate unusual circumstances defying the salutary purpose behind a bright-line edict. *Cf. id.* (Castille, J., concurring) ("To grant relief irrespective of actual prejudice, in instances such as those contemplated by *Edwards*, may forestall appeals, but at the cost of criminal justice.").

This case illustrates why we eschew such in inflexible standard. In our preceding alibi instruction cases, we have been faced either with a trial court's refusal to provide the instruction even when asked to do so by defense counsel, as in *Pounds*, or with trial counsel's failure to seek the instruction without a reasonable basis for doing so, as in *Roxberry II* and *Mikell*. In this case, contrarily, counsel made an informed, carefully considered decision not to seek the instruction due to his belief that such a jury charge would disserve his client's interests. We cannot sanction any ruling that would deny him this exercise of his autonomy in defending his client as effectively as circumstances permit, and the law does not require otherwise.[21]

Given the absence of any indication of prejudice from the record before us, even had we not determined that counsel had a reasonable basis not to seek the alibi instruction we would be remiss to find the requisite prejudice in this case.

21. Our research discloses only one case that approaches a rule of *per se* prejudice under these circumstances. In *Roseboro v. State*, 317 S.C. 292, 454 S.E.2d 312 (1995), the Supreme Court of South Carolina found counsel ineffective for choosing not to request an alibi instruction, thus rejecting his asserted reasonable basis that he did not want to draw attention to "alibi testimony [that] did not come off too well in

Accordingly, we hold that the Superior Court erred in affirming the order of the PCRA court granting Appellee a new trial. The Superior Court's order is reversed and the case remanded to the Superior Court. On remand, the Supe-

front of the jury." *Id.* at 313 (quoting counsel). The court found counsel's decision unreasonable, at least in part, because the prosecution disparaged defendant's alibi evidence to the jury and because the prosecution's case consisted principally of circumstantial evidence. Even in that case, however, the court did not rule out that a reasonable basis for declining the instruction might occur, it merely rejected the proffered basis under the facts of that case.

On the other hand, many of our sister states have held that whether to request an alibi instruction is a matter of trial strategy properly vested in the professional judgment of defense counsel, and thus, while the defense is entitled to such an instruction, it also may waive this entitlement. *See, e.g., Brantley v. Georgia,* 271 Ga.App. 733, 611 S.E.2d 71, 74 (2005); *Merrill v. Indiana,* 716 N.E.2d 902, 905 (Ind.1999); *Wycoff v. Iowa,* 382 N.W.2d 462, 472 (Iowa 1986); *Schmitt v. State,* 779 A.2d at 1023 (vindicating, on numerous alternative bases, counsel's strategic decision not to seek an alibi instruction, including that "he may not have wanted to clutter the minds of the jurors with a lot of legal gobbledygook that he deemed meaningless"); *Andreason v. Turner,* 27 Utah 2d 182, 493 P.2d 1278, 1280 (1972).

Still other courts have held that a standard reasonable doubt instruction provides sufficient protection in itself, and that even where alibi evidence has been adduced a specific alibi instruction is not required—even upon request. *See State v. Kim,* 773 A.2d 1051, 1054–55 (Me. 2001); *Commonwealth v. Knight,* 437 Mass. 487, 773 N.E.2d 390, 401 (2002); *State v. Landa,* 642 N.W.2d 720, 727 (Minn.2002); *State v. McGuire,* 110 N.M. 304, 795 P.2d 996, 1005–06 (1990); *State ex rel. Boso v. Hedrick,* 182 W.Va. 701, 391 S.E.2d 614, 620–21 (1990); *cf. Alicea v. Gagnon,* 675 F.2d 913, 926 (7th Cir.1982) ("We ... reject petitioner's contentions concerning the trial court's failure to give an alibi instruction. It was essential for the prosecution to prove petitioner's presence at the Sentry Food Store and the jury was so instructed [in the court's standard reasonable doubt instruction]."); *Meyer v. Lanham,* 27 F.Supp.2d 616, 619 (D.Md.1998) (acknowledging that, under Maryland law, defendant is entitled to alibi instruction if he presents alibi evidence, but finding no prejudice under *Strickland* in counsel's failure to object to the court's omission of the instruction). The Supreme Court of Washington has gone so far as to rule that, in the absence of a contrary mandate from the legislature, an alibi instruction simply should not be given no matter who requests it. *Washington v. Kubicek,* 81 Wash.2d 497, 502 P.2d 1190, 1193–94 (1972).

We believe the best solution is that adopted by those states that vest the prerogative to request an alibi instruction in the sound discretion of trial counsel and analyze counsel's decision not to seek an alibi instruction under the full performance and prejudice test promulgated by the United States Supreme Court in *Strickland,* which is co-extensive with our three-prong approach in *Pierce.*

rior Court is directed to remand this case in turn to the PCRA court to consider those claims of IAC it did not reach in virtue of its ruling granting Appellee a new trial on the basis rejected herein.

Justices CASTILLE and EAKIN join the opinion.

Chief Justice CAPPY files a concurring opinion in which Justices NEWMAN and BALDWIN join.

Justice SAYLOR concurs in the result.

## CONCURRING OPINION

Chief Justice CAPPY.

I join the Majority Opinion in all respects save for its characterization of the Superior Court opinion in this matter and the analysis which proceeds from this view.

The Majority reads the opinion below to suggest that the Superior Court found it unreasonable *per se* for trial counsel to fail to make the request for the alibi instruction. *See, e.g.,* Maj. Op. 586 Pa. at 374, 894 A.2d at 721. ("The lower court, however, found that *Roxberry II* in effect short circuits the *Pierce* test because *Roxberry II* 'does not permit either a finding that Appellee was not prejudiced or a finding that counsel had a reasonable strategy.' "). I disagree. I view the Superior Court's analysis as merely rejecting this particular trial counsel's basis for failing to seek the alibi instruction in this particular case. *See Hawkins,* 848 A.2d at 958–60. The Superior Court did not, in my view, remove the burden of pleading and proving the reasonable basis prong of the test set forth in *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). Thus, I find the analysis which purports to rectify this perceived error on the Superior Court's part to be unnecessary to the resolution of the ultimate question before the Court. Respectfully, therefore, I disassociate myself from this discrete facet of the Majority's analysis.

Justices NEWMAN and BALDWIN join this concurring opinion.