J-S68040-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                               :        PENNSYLVANIA
                               :
              v.               :
                               :
                               :
ROBERT GENE MILLER            :
                               :
          Appellant           :   No. 777 WDA 2018

Appeal from the PCRA Order May 2, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000398-2014

BEFORE:   SHOGAN, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:            FILED NOVEMBER 30, 2018

Appellant Robert Gene Miller appeals from the Order entered in the

Court of Common Pleas of Fayette County denying his first, counselled petition

for relief filed under the Post Conviction Relief Act (PCRA).[1]  We affirm.

On direct appeal, a panel of this Court reiterated the trial court's

recitation of the facts herein as follows:

> On January 13, 2014, Stephanie Kendall was working at the
> Footedale [M]arket with co-worker, Samantha Guseman, and
> owner, Janet Shaffer, when at approximately 8:50 p.m. Appellant
> walked into the store with a bandana on his face and a gun pointed
> at the workers. Appellant approached the counter and instructed
> Kendall and Guseman not to run, but they ran to the back of the
> store nonetheless. Appellant jumped over the counter to follow
> them while pointing the gun and demanding money. Guseman
> began yelling for help from Janet Shaffer and Appellant took off in
> [her] direction. Although out of her sight, Kendall could hear an
> argument and then a gunshot. Kendall noted that money was
> missing from the lottery drawer and that the drawer, which had

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

_____

*   Former Justice specially assigned to the Superior Court.

been closed prior to Appellant entering the store, was open. Kendall identified Appellant by a physical description that included his eyes, height, weight, gender, and voice.

Samantha Guseman confirmed that just prior to the 9:00 p.m. closing time, Appellant entered the Footedale Market, cocked his gun, and told her and Kendall not to run. No customers were in the store, but Janet Shaffer and her children were in the office and James Fisher, Jr. ("Jim") was in the attached apartment. While Appellant was three to four feet away and pointing the gun straight at her, Guseman summoned for Shaffer by yelling her name three or four times. Appellant kept asking where "she" was, referring to Shaffer, but Guseman would not answer him. Appellant left in Shaffer's direction and shortly thereafter Guseman heard a gunshot. Then, Guseman heard Appellant running through the store and the lottery drawer open. Guseman confirmed on the television monitor that Appellant had left the store and proceed[ed] to check on Jim who[m] she had heard say that he "got hit." Guseman found Jim crouched over with blood on the floor and asked if they "knew the Miller boys." Guseman recognized the identity of Appellant by his voice when she confirmed that they grew up on the same street, had the same circle of friends, and stated, "[Y]ou don't forget somebody you've known your whole life." With regards to his features, Guseman testified that only Appellant's eyes and forehead were visible that night, but that his eyes are recognizable from the "piercing like bluish color."

Janet Shaffer is the owner of the Footedale Market and was in the office of the store on the evening of January 13, 2014, when she heard Guseman and Kendall yelling for her. As Shaffer stood up, Appellant met her in the doorway to the office demanding money. Shaffer refused to give him money and she felt something touch her in the nose, but could not identify it as either Appellant's hand or the gun he was carrying. Appellant continued to demand money in a violent and loud manner, and Shaffer began yelling for her boyfriend Jim, who was located directly behind the office wall in the adjoining apartment. Jim entered the office through the apartment doorway and Appellant started yelling to "back the 'F' up, Jim, back up Jim." Jim slammed Shaffer back into the office portion and closed the door. From the other side of the door, Shaffer could hear Jim saying that he was shot. Shaffer was unable to provide an exact amount of money stolen from the lottery drawer because she had not counted it for the evening prior to Appellant entering the store, but she was able to estimate the amount to be between $60.00 and $100.00. Shaffer stated that

she has known Appellant throughout his entire life and that she recognized his voice and eyes.

[Jim] testified that he was at the apartment adjacent to the Footedale Market on the evening of January 13, 2014, when he heard a commotion from the workers and Shaffer yelling for him. When Jim entered into the office, he saw Appellant pointing a gun at Shaffer and then turning towards him, stating "Back up, the gun's loaded, I ain't playin." The rag on Appellant's face was drooping down and Jim immediately recognized the identity of Appellant, stating that he knew Appellant "since he was born." Jim was able to slam a door shut between Appellant and Shaffer and he attempted to jump back into the apartment when Appellant fired the gun hitting Jim with a bullet through the kneecap. With regards to medical treatment, Jim had a plate put in his leg because he was shot through the joint where his knee bends and anticipates a knee replacement in the future. Jim explained that the bullet "blew [his] femur" and "destroyed [his] knee."

Trooper James A. Pierce of the Pennsylvania State Police, a criminal investigator, recovered a bullet between the hallway and the front of the store.

At trial, Appellant presented the testimony of Natalie Sykes in his defense. Sykes testified that she and Appellant were on-and-off boyfriend and girlfriend, and that he spent the entirety of the day at her house, except for a trip to the gas station and drug store around five o'clock in the afternoon. Sykes testified that the car used to go on the errands at five o'clock belonged to Appellant's mother and that when Appellant returned to Sykes's house, Appellant's mother took the car, leaving him and Sykes without a vehicle. According to Sykes, the distance from her home to Footedale Market is fifteen minutes by car and Appellant did not leave until after nine o'clock when Sykes told him to leave to avoid the police.

Commonwealth v. Miller, No. 238 WDA 2015, unpublished memorandum at 1-4 (Pa.Super. filed July 29, 2015) (some brackets in original) (citing Trial Court Opinion, filed 3/31/15, at 2-6).

Following a jury trial held on December 8 and 9, 2014, Appellant was found guilty of five (5) counts of Robbery; four (4) counts each of Terroristic Threats and Recklessly Endangering Another Person; and one (1) count each

of Theft by Unlawful Taking and Aggravated Assault.[2]   Appellant was sentenced to seven (7) years to fifteen (15) years' incarceration on January 12, 2015.   Although he did not file a post-sentence motion, Appellant filed timely a notice of appeal.   Finding none of the issues Appellant raised had arguable merit, this Court affirmed Appellant's judgment of sentence on July 29, 2015. Appellant filed a petition for allocator, and our Supreme Court denied the same on December 16, 2015.

On November 7, 2016, Appellant filed the instant PCRA petition, and he filed an amended petition on January 19, 2017, wherein he set forth various allegations of trial counsel's ineffectiveness. The PCRA court conducted a hearing on March 15, 2017.   Thereafter, in its Opinion and Order entered on May 2, 2018, the PCRA court denied Appellant's petition.

Appellant filed a timely notice of appeal with this Court and his Concise Statement of Issues on Appeal on May 25, 2018,  wherein he raised the issues he presents in the Statement of Questions Involved portion of his appellate brief as follows:

> 1.      Whether the PCRA court erred in not finding defense counsel ineffective for failing to object to the witnesses' identification of Appellant as the perpetrator?
>
> 2.      Whether the PCRA court erred in not finding defense counsel ineffective for failing to object to the Commonwealth's impeachment of defense witness, Natalie Sykes, concerning her prior conviction for hindering apprehension or concealment?

_____

[2] 18 Pa.C.S.A. §§ 3701(a)(1)(ii); 2706(a)(1); 2705; 3921(a); and 2702(a)(4), respectively.

- 4 -

3.      Whether the PCRA court erred in not finding defense counsel ineffective for failing to object to the jury charge concerning crimen falsi?

4.      Whether the PCRA court erred in not finding defense counsel ineffective for failing to request a jury instruction concerning an alibi witness regarding defense witness, Natalie Sykes?

Brief for Appellant at 3 (unnecessary capitalization omitted).

Our review of these claims is guided by the following well-settled legal principles:

> [O]ur scope of review "is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." … We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions de novo.
>
> Commonwealth v. Reyes–Rodriguez, 111 A.3d 775, 779 (Pa. Super. 2015) (en banc ) (citations omitted).
> It is well settled that
> [c]ounsel is presumed effective, and in order to overcome that presumption a PCRA petitioner must plead and prove that: (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner.
> Commonwealth v. Mason, 634 Pa. 359, 130 A.3d 601, 618 (2015) (citations omitted). The petitioner must plead and prove all three prongs, and the failure to establish any one prong warrants denial of an IAC claim. Id.

Commonwealth v. Becker, 192 A.3d 106, 112–13 (Pa.Super. 2018).

Appellant initially argues the PCRA court erred in failing to find trial counsel ineffective for not objecting to various witness testimony identifying

him as the perpetrator. At trial, the Commonwealth presented four witnesses who testified that they were present and viewed the perpetrator during the commission of the crimes: Stephanie Kendall, Samantha Guseman, Janet Shaffer, and James Elwood Fisher, Jr. See N.T. Trial, 12/8/14, at 25-26; 34-36- 44-45; 47-50; and 59-60, respectively; however, Appellant did not identify with specificity or clarify the way in which his or her testimony was objectionable in his Concise Statement of Issues on Appeal.

It is well-established under Pennsylvania law that issues not raised in a Rule 1925(b) concise statement will be deemed waived. Pa.R.A.P.1925(b)(4)(vii); Commonwealth v. Castillo, 888 A.2d 775, 780 (Pa. 2005) ("in order to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925. Any issues not raised in a Pa.R.A.P. 1925(b) statement will be waived.") (internal citations, quotations, and corrections omitted; some internal capitalization omitted).

This rule of waiver also has been found to apply to concise statements "which are so vague as to prevent the court from identifying the issue to be raised on appeal." Commonwealth v. Dowling, 778 A.2d 683, 686–87 (Pa.Super. 2001) ("[A] Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all."). Additionally, "when an appellant fails to identify in a vague Pa.R.A.P.1925(b) statement the specific issue he/she wants to raise

on appeal, the issue is waived, even if the trial court guesses correctly and addresses the issue in its Pa.R.A.P.1925(a) opinion." Commonwealth v. Lemon, 804 A.2d 34, 38 (Pa.Super. 2002).

As presented in his concise statement of errors complained of on appeal, Appellant's first issue alleging trial counsel's ineffectiveness for failing to object to witnesses' identification of him was impermissibly vague, as numerous individuals testified and identified Appellant both on direct and on cross-examination. Accordingly, Appellant's first claim is waived. See Lemon, 804 A.2d at 37–38.[3]

_____

[3] Even had Appellant properly preserved this claim for our review, we note that on direct appeal, Appellant argued that the eyewitness identifications were unreliable because the witnesses had testified that his eyes were blue, when, in fact they are green and that they placed the gun in Appellant's right hand, and he is left handed. Upon considering such testimony, this Court found that "viewed in the light most favorable to the Commonwealth as the verdict winner, we cannot agree that the evidence was as unreliable and speculative as claimed by Appellant. These witnesses lived in a small town where Appellant was known to them. They recognized his voice, as well as other features. Such testimony, if believed by the jury, was sufficient to identify Appellant as the perpetrator." Commonwealth v. Miller, No. 238 WDA 2015, unpublished memorandum at 7-9 (Pa.Super. filed July 29, 2015).
In his brief herein, Appellant baldly avers that "[t]he Commonwealth failed to provide a proper foundation before these witnesses testified" and that "their testimony against him was motivated by personal animosity." Therefore, Appellant posits counsel should have objected because "the issue whether the witnesses could positively identify the perpetrator as the Appellant is not [a] matter of the weight of the evidence but rather is a matter of admissibility, and so Attorney Camson did not have a reasonable basis for his failure to object." Brief for Appellant at 10-11. The PCRA precludes relief for claims that have been previously litigated on direct appeal. 42 Pa.C.S.A. § 9543(a)(3), 9544. A claim is previously litigated for PCRA purposes where the "highest appellate Court in which the Petitioner could have had review as a matter of

Next, Appellant maintains defense counsel had been ineffective for failing to object to the Commonwealth's impeachment of Appellant's alibi witness Natalie Sykes in light of her prior conviction of 18 Pa.C.S.A. § 5105(a)(1), Hindering Apprehension. Appellant argues this Court has held that not all crimes relating to hindering apprehension or concealment constitute crimen falsi and in doing so relies upon this Court's decision in Commonwealth v. Harris, 658 A.2d 811 (Pa.Super. 1995) wherein we stated:

> It is evident from a reading of Subparagraphs (1)–(3) and (5) of Section 5105(a), had the appellant engaged in some form of "concealment," "disguise," or providing the authorities with "false" information, he was guilty of crimen falsi behavior triggering the prosecution's entitlement under Randall, supra, 515 Pa. 410, 528 A.2d 1326, to impeach the witness guilty of such misconduct. Instantly, however, we are not advised of any false statements attributable to the appellant regarding the whereabouts of the at-large friend, nor do we equate dishonesty with his failure to volunteer the location of the wanted man.

Id. at 813-14.

Appellant reasons that this language is dispositive herein as follows:

_____

right has ruled on the merits of the issue or it has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa.C.S.A. § 9544(a)(3). In Commonwealth v. Howard, 553 Pa. 266, 280–281, 719 A.2d 233, 240 (1998), the Pennsylvania Supreme Court held that a petitioner "is precluded from raising a claim of post-conviction review that was previously and finally litigated on direct appeal....Further, an appellant cannot obtain collateral review of previously litigated claims by alleging ineffective assistance of prior counsel and presenting new theories of relief."

At trial in the present case, the Commonwealth impeached Appellant's witness, Natalie Sykes, for her conviction for hindering apprehension and concealment in Commonwealth v. Natalie Sykes, Case No. 1444 of 2006. Attorney Camson claimed he did not object to the Commonwealth's impeachment of Natalie Sykes, because he was not familiar with the case used by the Commonwealth to impeach Natalie Sykes, and he thought the case sounded like crimen falsi. PCRA Hearing at 27.

In Case No. 1444 of 2006, Natalie Sykes merely pled guilty to refusing to allow a Parle Officer into her home to take custody of a wanted man. She did not admit to any attempt to conceal the wanted man, any attempt to disguise the wanted man, or to providing authorities with false information. Therefore, Natalie Sykes['] admission of guilt in Case No. 1444 of 2006 does not constitute a crimen falsi offense. Attorney Camson's failure to object to the impeachment of Natalie Sykes prejudiced Appellant, because Appellant intended to use Natalie Sykes as an alibi witness, and the Commonwealth's impeachment of her truthfulness caused the jury not to believe her testimony. Therefore, Attorney Camson was ineffective for failing to object to the impeachment of Natalie Sykes.

Brief for Appellant at 13.

The PCRA court denied Appellant's claim that trial counsel was ineffective in this regard and in doing so cited to Ms. Sykes' PCRA hearing testimony at which time she informed the court that the "parole officer came looking for [her] husband at [her] house [...] and [she] said he wasn't there." PCRA Court Opinion, filed 5/2/18, at 4 (citing N.T. PCRA Hearing, 3/15/17, at 5). Specifically, the PCRA court opined that:

[t]his false statement to the parole officer constituted behavior sufficient for this [c]ourt to have concluded that the underlying Hindering Apprehension conviction was crimen falsi in nature and sufficient "concealment," "disguise," or "false" information to implicate the ability of the Commonwealth to use the prior conviction for impeachment purposes. Since this claim also lacks arguable merit, [Appellant] is warranted no relief under the PCRA.

PCRA Court Opinion, filed 5/2/18, at 4.

When reviewing a PCRA court's determination that a reasonable basis existed for counsel's action or omission, we are mindful that:

> [g]enerally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different.

Commonwealth v. Colavita, 606 Pa. 1, 993 A.2d 874, 887 (2010) (citations and quotation marks omitted).

At the PCRA hearing, PCRA counsel questioned Ms. Sykes regarding the facts that gave rise to her conviction of Hindering Apprehension or Concealment on January 4, 2006. Ms. Sykes responded as follows:

> Seven months pregnant and the parole office came looking for my husband at my house and that's why I got charged with it because they came there looking for him and I said he wasn't there.

N.T. PCRA Hearing, 3/15/17, at 5.

PCRA counsel asked Ms. Sykes to further explain the circumstances surrounding her conviction at which time she stated she was unaware her husband was at the house at the moment the parole officer arrived and claimed she had given permission for the residence to be searched. Id. at 6. She explained she pled guilty to the charge "[b]ecause at the time it was just

- 10 -

finances, I had no money, you know what I mean? It was just easier for me to plead guilty to the charge." Id.

At this juncture, the PCRA court stated that it is "crucially relevant as to what her plea was," for if she pled guilty for the aforesaid reasons, the trial court would not have accepted her plea. Id. at 8. The PCRA court provided PCRA counsel with an opportunity to continue the hearing to supplement the record with a transcript of the plea proceeding, because that "would show intent versus no intent to deceive." Id. at 9, 11. Upon further discussion with PCRA counsel and the Commonwealth, the PCRA court expressed its concern with Ms. Sykes possibly facing a perjury charge were she to continue to dispute what she had sworn to earlier in court and explained that if she were to change that testimony, her Fifth Amendment rights may be invoked. Id. at 9. PCRA counsel indicated his intent to seek a continuance on the advice of the PCRA court which stated it "[didn't] know how you can proceed along these lines putting her in possible jeopardy if she swore to something before and she's swearing to something differently now." Id. at 12.

Thereafter, trial counsel testified at which time he agreed he had failed to object to the Commonwealth's impeachment of Ms. Sykes concerning her prior conviction at trial. Counsel explained he did not object because, as a defense attorney, he was familiar with the fact that one who had pled guilty to a Hindering Apprehension charge would have harbored or concealed another person. N.T. PCRA Hearing, 3/15/17, at 26-27. Counsel also

- 11 -

indicated Ms. Sykes was not an "ironclad alibi," for she had given police different accounts of Appellant's whereabouts, and he "did not want to draw anymore [sic] attention to Ms. Sykes' testimony." Id. at 28. Counsel further explained:

> [w]e kind of focused the defense on, these people don't know what color this guy's eyes are, they have a grudge against him, they're making it up, it was somebody else, and that was kind of the gist of the defense theory and I wanted to keep it focused on the Commonwealth's burden, this is their case, they haven't met that and these people are making it up. So I didn't want to draw anymore [sic] attention to her.

Id.

In an Order entered on March 15, 2017, the PCRA court continued the PCRA hearing to May 5, 2017.[4] Ms. Sykes did not appear to testify at that time; however, PCRA counsel indicated he had obtained the transcript from Ms. Sykes' guilty plea proceeding and would have had her read it into the record. A copy of that transcript is not in the certified record herein; thus, we are unable to review it. We remind Appellant "our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete [and] contains all of the materials necessary for the reviewing court to perform its duty." See Commonwealth v. Bongiorno,

_____

[4] Also on that date, the PCRA Court issued another Order directing Appellant to submit a brief in support of his position within sixty (60) days, with the Commonwealth having thirty (30) days thereafter in which to do the same.

- 12 -

905 A.2d 998, 1000 (Pa. Super. 2006), appeal denied, 691 Pa. 688, 917 A.2d 844 (2007).

Having reviewed the record before us, the PCRA court's ruling, and Appellant's arguments, we agree with the PCRA court's determination that this claim lacks arguable merit. Initially, we note that Appellant's reliance on Harris is misplaced, for he fails to recognize that in Harris this Court engaged in the analysis of the facts underlying the previous conviction because, based solely on the statutory definition of the offense, we concluded a conviction for hindering apprehension did not satisfy the crimen falsi requirement. However, even if the definition itself does not include a crimen falsi element, an offense might still be considered for purposes of impeachment under Pa.R.E. 609 if the facts of its commission may render it such in a particular case. See Commonwealth v. Coleman, 664 A.2d 1381, 1383–84 (Pa.Super. 1995), appeal denied, 545 Pa. 675, 682 A.2d 306 (1995); see also Harris, supra.

Moreover, we find no basis in the record to conclude that Appellant would have had a greater potential for success if trial counsel had objected to the Commonwealth's impeachment of Ms. Sykes. First, as stated previously, we are unable to substantiate Appellant's references to Case No. 1444 of 2006 pertaining to Ms. Sykes' guilty plea for his failure to include the transcript for our review herein. Notwithstanding, Ms. Sykes answered "yes" when asked on cross-examination at trial if she had been convicted of Hindering Apprehension or Concealment in November of 2006. N.T. Trial, 12/8-9/2014,

at 96. This was the only reference to that conviction, as no additional questions pertaining thereto were asked either on cross-examination or on redirect examination.

In addition, Appellant's bald claim that counsel's "failure to object to the impeachment of Natalie Sykes prejudiced Appellant, because Appellant intended to use Natalie Sykes as an alibi witness, and the Commonwealth's impeachment of her truthfulness caused the jury not to believe her testimony," see Brief for Appellant at 13, is belied by the record, for Ms. Sykes' responses on cross-examination otherwise cast doubt on her veracity. For example, Ms. Sykes admitted Appellant had left her home for a period of time and that she told Trooper Pierce: "I'm not saying that he didn't do it but I thought he was here all night." N.T. Trial 12/8-9/14, at 89-92, 96. Because Appellant has not demonstrated that trial counsel lacked a reasonable basis for not objecting to the Commonwealth's impeachment of Ms. Sykes or that this omission prejudiced him, this claim warrants no relief.

Appellant's final two issues challenge trial counsel's failure to object to the jury charge. In reviewing the trial court's instructions, we are mindful that

> [a] jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the [defendant] was prejudiced by that refusal.

Commonwealth v. Sandusky, 77 A.3d 663, 667 (Pa.Super. 2013) (citation omitted).

Appellant first claims defense counsel had been ineffective for failing to object to the trial court's jury charge pertaining to Ms. Sykes' crimen falsi conviction. Appellant's entire argument on this point reads as follows:

> In the present case, the [c]ourt's definition of crimen falsi confused the jury, which is evident by the jury having to question the [c]ourt during its deliberations as to whether the jury could base its verdict on one witness's testimony. TT At 117. Attorney Camson should have objected to the confusing charge concerning crimen falsi, and his failure to do so resulted in the jury completely dismissing the testimony of Natalie Sykes, because of the Commonwealth's impeachment of her testimony.

Brief for Appellant at 14.

Appellant's argument is undeveloped, and this conclusory and self-serving analysis fails to satisfy the requirements of the test for ineffectiveness. See Commonwealth v. Natividad, 595 Pa. 188, 209, 938 A.2d 310, 322 (2007) ("An undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief.") (citations omitted). Nevertheless, the PCRA court properly instructed the jury that the only purpose for which it may consider Ms. Sykes' prior conviction in deliberations was for the purpose of deciding whether to believe all or part of her testimony. N.T. Trial, 12/8-9/14 at 104. As such, this bald claim that the instruction was "confusing" fails.

Finally, Appellant argues trial counsel was ineffective for failing to request an alibi witness jury instruction. Appellant stresses that trial counsel admitted at the PCRA hearing he had called Ms. Sykes as an alibi witness, but failed to request an alibi jury instruction because he believed her testimony was not "ironclad." Brief for Appellant at 15. Appellant posits counsel's view is unsupported by the record which contains Ms. Sykes' testimony that Appellant was at her home at the time of the robbery and lacks positive identification of Appellant from the Commonwealth's witnesses. Id. at 16. Appellant concludes counsel's failure to request the instruction prejudiced him "because it prevented the jury from considering Natalie Syke[s]' exculpatory testimony as an alibi defense, and it left jurors with the opinion that the Defense's failure to prove Natalie Sykes' testimony was a sign of [ ] Appellant's guilt." Id.

In analyzing this issue, we are mindful of the following:

An alibi is "a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." [Commonwealth v. Roxberry], 529 Pa. 160[ ], 602 A.2d 826, 827 [ (Pa. 1992) (Roxberry II ) ] (quoting Commonwealth v. Jones, 529 Pa. 149, 602 A.2d 820, 822 (1992)). In Commonwealth v. Pounds, [ 490 Pa. 621, 417 A.2d 597 (Pa. 1980),] we held that a trial court, faced with alibi evidence,[3] should instruct a jury generally that "it should acquit if defendant's alibi evidence, even if not wholly believed, raises a reasonable doubt of his presence at the scene of the crime at the time of its commission and, thus, of his guilt." [Pounds, 417 A.2d at 603]. The instruction,[4] we held, is critically important to offset "the danger that the failure to prove the defense will be taken by the jury as a sign of the defendant's guilt." Id. We explained that the defendant bears no burden of proof in a criminal case, and that to

infer guilt based upon a failure to establish an alibi "contravenes the presumption of innocence and the Commonwealth's burden of proving the offense beyond a reasonable doubt." Id. at 603 n. 17. Given these concerns, we have held unequivocally that "a defendant is entitled to an alibi instruction when evidence of alibi ... has been introduced." Id. at 602 (citing Commonwealth v. Bonomo, 396 Pa. 222, 151 A.2d 441 (1959)). Further, we held in Pounds that "general instructions on the Commonwealth's burden of proving each element of the offense beyond a reasonable doubt, the absence of a burden of proof on the defendant, and assessing the credibility of witnesses do not adequately protect against" the danger posed by the misapprehensions a jury might indulge regarding the relevance and effect of alibi evidence. Id. at 603.

Commonwealth v. Hawkins, 586 Pa. 366, 894 A.2d 716, 717–718 (2006)

(internal citations and footnote omitted).

The failure to request an alibi instruction does not constitute prejudice per se. Hawkins, 586 Pa. at 389, 894 A.2d at 729. Thus, Appellant bears the burden of establishing that counsel had no reasonable basis for his failure to request the alibi instruction and that he was prejudiced as a result. Id.

In finding no merit to this claim, the PCRA court reasoned as follows:

Trial Counsel Joshua Camson, Esquire, was questioned at the PCRA hearing and testified that his trial strategy concluded the instruction would not have been beneficial to [Appellant's] defense because the alibi testimony of Natalie Sykes "didn't go as well" as he anticipated. N.T., PCRA Proceedings, 3/15/2017, at 28. Attorney Camson told the [c]ourt, and as is supported by the trial transcript, that Natalie Sykes "wasn't an ironclad alibi by any stretch of the imagination" and that at trial Sykes testified that [Appellant] "left at some point." Id.
Where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interest. Commonwealth v. Koehler, 36 A.3d 121 (Pa. 2012). Trial Counsel testified credibly that it was his strategy not to highlight the alibi testimony as the alibi was not

- 17 -

"ironclad." His strategy will not be questioned by this [c]ourt as he had a reasonable basis for not requesting the alibi instruction. [Appellant] has failed to meet his burden of proving his [t]rial [c]ounsel's ineffective assistance, and accordingly, the Petitioner is DENIED.

PCRA Court Opinion, filed 5/2/18, at 4-5. Following our review, we discern no error of law in the PCRA court's determination.

The notes of testimony reveal that counsel had a reasonable basis for not pursuing an alibi defense. As stated previously, counsel stated he did not want to call additional attention to Ms. Sykes' questionable testimony. Instead, counsel believed the better strategy was to center the defense around shortcomings in the Commonwealth's case. N.T. PCRA Hearing, 3/15/17 at 28-29. Moreover, a prior panel of this Court found the Commonwealth presented ample testimonial and video surveillance evidence to establish that Appellant had been the perpetrator of the crimes. Commonwealth v. Miller, No. 238 WDA 2015, unpublished memorandum at 7-9 (Pa.Super. filed July 29, 2015). As a result, Appellant cannot prove that, had the instruction been given, the result of the trial would have been different. Commonwealth v. Becker, 192 A.3d 106, 13 (Pa.Super. 2018).

For all of the foregoing reasons, we affirm the PCRA court's Order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/30/2018