J-S25011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　:　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　　　:　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
CARL LEONARD VARNER　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　Appellant　　　　　　　　　:　　No. 872 MDA 2019

Appeal from the PCRA Order Entered April 25, 2019
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):　CP-28-CR-0002100-2012

BEFORE:　LAZARUS, J., DUBOW, J., and KING, J.

MEMORANDUM BY LAZARUS, J.:　　　　　　　**FILED JULY 06, 2020**

Carl Leonard Varner appeals *pro se* from the trial court's order
dismissing his amended petition, after hearings, filed pursuant to the Post
Conviction Relief Act (PCRA).　**See** 42 Pa.C.S. §§ 9541-9546.　After careful
review, we affirm.

Following a jury trial, in December of 2014, Varner was convicted of
first-degree murder[1] and twenty five associated charges.[2]　The charges
stemmed from an incident that occurred on October 22, 2012, when Varner
and a co-defendant, Jason Shauf, both brandishing firearms, forced their way
into a Chambersburg residence occupied by six men.　The assailants separated

---

[1] 18 Pa.C.S. § 2502(a).

[2] The other offenses included robbery, burglary, conspiracy, kidnapping to
facilitate a felony, kidnapping to commit burglary, and unlawful restraint
(serious bodily injury).

the victims into different bedrooms in the home and robbed each of them. Shauf fired a shotgun into the ceiling of one of the rooms. Shauf saw Varner, wielding a firearm, go upstairs with two of the residents. Shauf then heard two gunshots fired from upstairs, and subsequently saw Varner run down the stairs. A fatal shot was fired into the neck of one victim using a .22 caliber revolver. During their investigation, police found a .22 caliber revolver wrapped in a bandana and a .410 shotgun in Varner's basement. At trial, Shauf and several individuals identified Varner as the man who shot the victim.

On January 7, 2015, Varner was sentenced to life imprisonment without the possibility of parole, as well as a consecutive term of 44-88 years in prison. Our Court affirmed his judgment of sentence on April 26, 2016. **See Commonwealth v. Varner**, 208 MDA 2015 (Pa. Super. filed April 26, 2016) (unpublished memorandum). Subsequently, Varner moved to dismiss court-appointed counsel. After conducting a hearing, the trial court granted the motion and dismissed counsel. On April 25, 2017, Varner filed a *pro se* PCRA petition. The court appointed PCRA counsel for Varner; however, on July 10, 2017, Varner filed a *pro se* amended PCRA petition. On July 24, 2017 and September 18, 2017, Varner filed motions for extension of time to file a supplemental PCRA petition, both of which the court granted.[3] The court held

---

[3] On December 29, 2017, Varner filed a notice of intent not to file a supplemental PCRA petition and requested that the court incorporate his *pro se* amended petition filed on July 10, 2017.

- 2 -

hearings on the petition on April 2, 2018 and July 19, 2018. On April 25, 2019, the trial court denied Varner's *pro se* amended petition.

Varner filed a timely notice of appeal on May 17, 2019. On June 7, 2019, Varner filed a motion for extension of time to file his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal (Statement), which the court granted, giving Varner until July 5, 2019 to file his Statement. On June 28, 2019, counsel filed a motion to withdraw; subsequently, Varner filed a motion to dismiss counsel and proceed *pro se*. Following a **Grazier**[4] hearing, which included a full colloquy regarding Varner's right to counsel, the court permitted Varner to proceed without counsel after concluding that he had made a knowing, intelligent and voluntary decision to proceed *pro se* in his collateral appeal. Varner filed a Rule 1925(b) Statement on July 5, 2019, and an amended *pro se* Statement on September 9, 2019, by leave of court.

On appeal, Varner presents the following issues for our consideration:

(1)    Whether [the] PCRA court has abused its discretion in determining that trial counsel was not ineffective for their failure to timely challenge misrepresentations within the affidavit of probable cause, where [a] co-defendant has recanted [a] prejudicial testimonial statement?

(2)    Whether [the] PCRA court abused its discretion where the court determined trial counsel was not ineffective for their failure to procure Jose Espinosa at trial, when Espinosa could impeach the credibility of the Commonwealth[']s

---

[4] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998) (when defendant seeks waiver of right to counsel at post-conviction and appellate stages, trial court must conduct on-the-record determination that waiver is knowing, intelligent, and voluntary).

eyewitnesses, and could testify as to the lighting conditions and layout of the home?

(3)     Whether [the] PCRA court abused its discretion where the court determined that trial counsel was not ineffective for their failure to pursue witness identification testimony from the crime scene which is material to appellant's innocence, and where the court ignored the fact that the prosecution withheld such vital information in violation of **Brady v. Maryland**, 373 U.S. 83 [] (1963)?

(4)     Whether [the] PCRA court erred in its determination that trial counsel was not ineffective for failing to object to the prosecution[']s willful [] and bad[]faith introduction of suppressed identification testimony of Jose Herrera?

(5)     Whether [the] PCRA court erred where it determined that trial counsel w[ere] not ineffective for their failure to object to the prosecution[']s use of false timeline identification testimony, as well as where the court did not address the prosecution[']s use of known false testimony?

(6)     Whether [the] PCRA court abused its discretion in determining that trial counsel is not ineffective for their failure to timely file and serve a notice of alibi defense, and furthermore for their failure to seek an alibi instruction.

(7)     Whether the PCRA court erred, where the court determined that counsel was not ineffective for their failure to object to the introduction of [Varner's] prior bad acts, crimes, and mental health, as[] well [] as where the court did not address the prosecutors' bad[]faith introduction of such evidence.

(8)     Whether [the] PCRA court erred, where the court ruled that counsel was not ineffective for failing to object to the seating of Juror No. 2?

(9)     Whether the PCRA court abused its discretion where the court determined that counsel was not ineffective for failure to object to the prosecution[']s use of inflammatory tactics and commentary during closing arguments, as well as where the court failed to address the prosecution[']s bad faith use of epithets which inflamed the passions and prejudices of the jury?

(10) Whether [the] PCRA court abused its discretion where it determined that [Varner] failed to raise prosecutorial misconduct issues and that those issues are now waived, when the court assured [Varner] and PCRA counsel that the prosecutorial misconduct issues raised by [Varner] would be reviewed and considered within the PCRA court's opinion, and the PCRA court ultimately failed to issue any robust determination which would enable effective appellate review.

Appellant's Brief, at 5-9 (unnecessary capitalization omitted).

"The standard of review of an order denying a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Johnston*, 42 A.3d 1120, 1126 (Pa. Super. 2012). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id.*

Nine of Varner's ten PCRA claims allege counsel[5] were ineffective in representing him at trial. With respect to claims of ineffective assistance of counsel, we begin with the presumption that counsel is effective. *Commonwealth v. Spotz*, 47 A.3d 63, 76 (Pa. 2012). To prevail on an ineffectiveness claim, a petitioner must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction. *Id.* (citation omitted).

---

[5] Varner was represented by two attorneys at trial, Michael Palermo, Esquire, and Eric Weisbrod, Esquire.

Varner first contends that trial counsel were ineffective for failing to challenge misrepresentations in the affidavit of probable cause supporting the warrant to search his residence. Specifically, Varner asserts that a detective in the Chambersburg Police Department intentionally misrepresented his co-defendant's statement that Varner "shot [t]he [m]an in the upstairs of the residence," when Shauf never said this in his videotaped interview with investigating officers. Appellant's Brief, at 16 (citation omitted).

At the PCRA hearing, Varner's trial attorneys testified that they believed a motion to challenge the affidavit of probable cause would have been unsuccessful based on the fact that a full preliminary hearing had been held in the case, after which all charges were bound over for trial. N.T. PCRA Hearing, 4/2/18, at 191-92. Under the circumstances, we agree that any such motion would have been frivolous. *See Commonwealth v. Chamberlain*, 30 A.3d 381, 423 (Pa. 2011) (any issue concerning defect in affidavit of probable cause becomes moot upon district justice's finding at preliminary hearing that *prima facie* case has been established). Thus, this claim is meritless.

Varner next claims that counsel were ineffective for failing to call Jose Espinosa as a defense witness at trial.

When raising a failure to call a potential witness claim, a PCRA petitioner must establish that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify

for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007).

Attorney Weisbrod testified at the PCRA hearing that his office had prepared a trial subpoena for Espinosa; however, counsel could not recall why Espinosa did not testify. Although Espinosa existed, was available to testify, and counsel was aware of him, *Washington*, *supra*, the PCRA court determined that the absence of Espinosa's testimony was not so prejudicial so as to deny Varner a fair trial. Specifically, the court found that the Espinosa's testimony would have been cumulative of other individuals' testimony that the occupants of the Chambersburg residence were drinking heavily and using illegal drugs on the night of the incident. Because the jury heard evidence of the drug and alcohol use from other witnesses and any other information Varner claims Espinosa would have offered would have been inadmissible hearsay, Varner was not prejudiced by the absence of Espinosa's testimony. Thus, there is no merit to this claim.

Varner next asserts that trial counsel were ineffective for failing to pursue witness identification testimony from the crime scene; —specifically a reference in a police report indicating that two black men were seen in the vicinity of the crime scene on the night in question. He claims such testimony was material to his innocence, and that the prosecution withheld this vital information in violation of *Brady*, *supra*.

Chambersburg Police Officer Victor Dimoff allegedly prepared a police report referencing two black men being seen in the vicinity of the crime scene on the night of the incident. At the PCRA hearing, Attorney Palermo testified that he believed the officer's notes had been requested, but they did not exist. Varner, himself, indicated that the defense had, in fact, filed a motion to compel the officer's notes, which was granted. N.T. PCRA Hearing, 4/2/18, at 50. However, Attorney Palermo testified that Attorney Weisbrod told him that the notes did not exist and, therefore, could not be provided by the Commonwealth. *Id*. at 159-60, 194. Attorney Weisbrod also testified that the defense subpoenaed Officer Dimoff and called him as a witness at trial. *Id.* Because counsel filed a motion to compel and subpoenaed Officer Dimoff to be a witness at Varner's trial, the underlying ineffectiveness claim has no merit. *Spotz*, *supra*. Moreover, because counsel testified that the notes did not exist, Varner's *Brady* claim is moot.

Varner next contends that counsel was ineffective for failing to object to the identification testimony of Jose Herrera, which he claims had been suppressed prior to trial.

At the PCRA hearing, counsel acknowledged that Herrera identified Varner in-court as the individual who shot and killed the victim. However, counsel understood the court's suppression order to only apply to Herrera's photo line-up identification of Varner, and not his in-court identification. Counsel is in fact correct; a plain reading of the trial court's ruling and order indicates that it only suppressed Herrera's out-of-court, photo array

identification. *See* Trial Court Opinion, 9/4/14, at 24; *see also* Trial Court Order, 9/4/14, at ¶ 3; N.T. PCRA Hearing, 4/2/18, at 213. Thus, there is no merit to this claim.

In his next issue, Varner claims that counsel were ineffective for their failure to object to the prosecution's use of false timeline identification testimony. Specifically, Varner contends that he was only identified by a photo line-up that occurred four days after he was charged and not on the same evening of the crimes as "asserted by the prosecution through witness[es] Augustine Marquez and Arturo Perez." Appellant's Brief, at 58.

Varner fails to explain how the fact that witnesses identified him days after the shooting, as opposed to on the day of the crime, "resulted in prejudice." Appellant's Brief, at 65. In fact, multiple witnesses, in addition to Marquez and Perez, positively identified Varner as the victim's assailant. Because Varner cannot prove that he suffered prejudice as a result of counsel's alleged action or inaction, *Spotz*, *supra*, Varner is not entitled to relief on this claim.

Next, Varner contends that counsel was ineffective for failing to timely file and serve a notice of alibi defense and seek an alibi instruction.

An alibi is "a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." *Commonwealth v. Roxberry*, 602 A.2d 826, 827 (Pa. 1992) (citations omitted). When a defendant intends to offer an alibi defense at trial, Pa.R.Crim.P. 567 requires

the defendant file a notice[6] of the alibi with the clerk of courts, and serve a copy of the notice and a certificate of service on the attorney for the Commonwealth. **See** Pa.R.Crim.P. 567(A).

Here, Varner's counsel testified that they employed more of a "backdoor" or "quasi"-alibi defense at trial, using Varner's testimony as well as a witness's testimony to place Varner at Shauf's residence on the night of the crime around 9:30-9:45 PM. While counsel never filed a formal notice of alibi defense or requested an alibi instruction, the jury had the opportunity to consider the evidence to determine whether Varner was present at the crime scene during the relevant time period. However, even though witness Eichelberger testified that Varner was sleeping on Shauf's couch just prior to the time the crimes were committed, his testimony did not completely eliminate the possibility that Varner could have committed the offenses. Under such circumstances, we do not find counsels' failure to serve a notice of alibi or seek an alibi instruction unreasonable, especially where there was overwhelming evidence, including eyewitness testimony, placing Varner at the

_____

[6] Rule 567 mandates, "[t]he notice shall contain specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses whom the defendant intends to call in support of the claim." Pa.R.Crim.P. 567(A)(2). Furthermore, if a defendant fails to file and serve the requisite notice of alibi, subsection (B)(1) of Rule 567 provides that "the court may exclude entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant, may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require." Pa.R.Crim.P. 567(B)(1).

scene of the crime. ***See Commonwealth v. Hawkins***, 894 A.2d 716, 730 (Pa. 2006) (court found reasonable basis for failure to seek alibi instruction where counsel explained that "in his twenty years of experience he had come to the conclusion that where alibi testimony is weak, or is predicated on the defendant's testimony alone, calling attention to that testimony explicitly as alibi evidence disserves the defendant's interests"). ***Id.*** at 730. This claim of ineffectiveness, therefore, is meritless.

In his next issue, Varner asserts that counsel were ineffective for failing to object to the improper admission of his prior bad acts, crimes, and mental health issues, all of which were part of Shauf's un-redacted video interrogation. At the PCRA hearing, Varner testified that he did not ask counsel to object to the use of Shauf's unredacted video and, in fact, at trial, did not want counsel to object to its use because he did not want to have a mistrial declared. N.T. PCRA Hearing, 4/3/18, at 80-81. Varner cannot now claim counsel was ineffective when he specifically told counsel not to object to the admission of such evidence.

With regard to his eighth issue on appeal, Varner contends that counsel was ineffective for failing to object to the seating of Juror #2. At the PCRA hearing, counsel testified that Juror #2 had a prior relationship with Shauf "because of a poor business dealing." N.T. PCRA Hearing, 4/2/18, at 211. In determining not to object to the juror being empaneled, counsel explained that he had a full conversation with Varner that it was in Varner's best interest to keep her on the jury so the defense could convince "the jury to believe that

- 11 -

Mr. Shauf was a liar." *Id.* at 212. Because the strategy pursued by counsel was reasonable, Varner's ineffectiveness claim fails. *Spotz*, *supra*; *Commonwealth v. Koehler*, 36 A.3d 121 (Pa. 2012) (generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose particular course that had some reasonable basis designed to effectuate client's interests).

In his next issue, Varner asserts that counsel was ineffective for failing to object to the prosecution's use of inflammatory tactics and commentary during closing arguments which, he claims, inflamed the passions and prejudices of the jury. Specifically, Varner objects to the use of photographs of the victim, while he was alive, during witness testimony and the Commonwealth's closing argument. Varner contends that the photos "remained on display in the presence of the jury . . . . [t]hroughout the majority of the prosecution's misconduct." Appellant's Brief, at 102.

Our standard of review is well-settled. "Decisions regarding the admissibility of photographs are committed to the sound discretion of the trial judge and will not be reversed absent a showing that the trial court abused its discretion." *Commonwealth v. Hernandez*, 590 A.2d 325, 329 (Pa. Super. 1991). In *Commonwealth v. Robinson*, 864 A.2d 460 (Pa. 2004), our Supreme Court stated:

> In relation to admissibility of victim photographs, the Supreme Court of Pennsylvania has promulgated the following test. A court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory,

the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. If an inflammatory photograph is merely cumulative of other evidence, it will not be deemed admissible.

*Id.* at 501 (citations omitted).

Varner testified at the PCRA hearing that he did not know the significance of displaying the victim's photograph during trial. N.T. PCRA Hearing, 4/2/18, at 85-87. In fact, Varner was not aware of a potential prosecutorial misconduct claim based on the photos until he "read some of the things [in several cases]" during a paralegal course he took in prison. *Id.* at 87. Attorney Weisbrod testified at the PCRA hearing that he "couldn't formulate any prejudice which would be the basis [to object to the display of the pictures]." *Id.* at 203-04. In addition, Attorney Palermo testified that unless they are of a graphic nature, he would not normally object to pictures of a victim being shown during trial because such an objection is normally overruled. *Id.* at 173.

Here, counsel acknowledged that the pictures were not graphic, they were pictures of the victim while he was alive. Thus, they were not inflammatory. Since the photographs were not inflammatory, they are admissible if relevant and if they assisted the jury in understanding the facts of the case. *Robinson*, *supra*. Instantly, the photographs were shown during the district attorney's direct examination of Augustin Marquez. Specifically, the D.A. showed Marquez a photograph of the victim while alive and asked him: (1) Did the victim have family that lived in the United States;

and (2) Do you miss him?  N.T. PCRA Hearing, 12/8/14, at 156.  The other time the photographs were displayed was during the Commonwealth's closing argument.  *See id.*, 12/17/14, at 96-98.  The D.A. talked about how the victim's family had not spent the holidays with him since 2012 and how "[the victim] won't have another one, never open another gift . . . [n]ever give another gift because of [Varner and Shauf], dumb and dumber."  *Id.* at 97.

While the attorneys referenced the fact that the victim's family had to spend the past two holidays without him, the statement was not so highly emotional that it prejudiced Varner.  *Cf. Commonwealth v. Story*, 383 A.3d 155 (Pa. 1978) (where victim's wife described photographs of her husband with their child, defendant was prejudiced as prosecutor created sympathy for victim and his family; prosecutor stated victim was married man, father, and used term "family man," told jury victim "is more than a body" and wanted jury "to get some feel for this activity of his life.").  Critically, here the photographs of the victim were not sent out with the jury for deliberations and the jury was also instructed that they "should keep deliberations free of prejudice or bias."  N.T. 12/17/14, at 162; *Hernandez*, *supra*.  Moreover, the witness was not questioned extensively about the victim's life.  Balancing the probativeness of the evidence against its prejudicial impact, we cannot find that the limited viewing of the non-inflammatory pictures of the living victim was erroneous.  *Commonwealth v. Mehmeti*, 462 A.2d 657 (Pa.

1983).[7]  Counsel, therefore, were not ineffective for failing to object to the prosecution's use of the photographs.

Finally, Varner contends that the PCRA court abused its discretion when it determined that Varner failed to raise prosecutorial misconduct issues and that those issues are now waived, especially "when the court assured Varner and PCRA counsel that the prosecutorial misconduct issues raised by [Varner] would be reviewed and considered within the PCRA court's opinion, and the PCRA court ultimately failed to issue any robust determination which would enable effective appellate review."  Appellant's Brief, at 9.

Having independently reviewed the record, including the notes of testimony from the PCRA hearings, we conclude that there is no merit to Varner's prosecutorial misconduct issues.  *See Commonwealth v. Tedford*, 960 A.2d 1, 29 (Pa. 2008) ("In order to obtain relief for alleged prosecutorial 'misconduct,' a petitioner must first demonstrate that the prosecutor's action violated some statutorily or constitutionally protected right.") (citation omitted).  Therefore, the court did not abuse its discretion in finding those meritless issues waived.

Order affirmed.

_____

[7] Moreover, after reading the entirety of the Commonwealth's closing argument, we conclude that the prosecutor's comments were not so highly prejudicial as to prevent the jury from rendering a true verdict.  *See Commonwealth v. Clancy*, 192 A.3d44 (Pa. 2018) (prosecutor's "language must be such that its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>07/06/2020</u>